## DELLAR v. SAMUEL GOLDWYN, Inc., et al.

### No. 278.

Circuit Court of Appeals, Second Circuit.

June 25, 1945.

Clara Dellar, pro se.

Paul D. O'Brien, of New York City, for appellees.

Before L. HAND, AUGUSTUS N. HAND and CLARK, Circuit Judges.

## PER CURIAM.

When this case was before us six years ago (Dellar v. Samuel Goldwyn, Inc., 2 Cir., 104 F.2d 661, 662), we said that we had read the defendants' "cutting continuity" and both versions of the play; and that, "even though the defendants took from this play all those matters in which the film resembles it, they were within their rights in doing so." We did not in fact have before us what was, properly speaking, a "cutting continuity": that is, a continuity made at the same time as the positives, and merely designed to help an "exchange" check the positives on their return by an exhibitor. The continuity which we did have was, however, made before the film, and the defendants alleged that it was a complete representation of it: it was the continuity on which Judge Woolsey decided the case, and we shall speak of it as the "Woolsey continuity." We cited as authority for holding that it did not infringe the play, our decisions in Nichols v. Universal Pictures Corporation, 2 Cir., 45 F.2d 119, Sheldon v. Metro-Goldwyn Pictures Corporation, 2 Cir., 81 F.2d 49, and Shipman v. R. K. O. Radio Pictures, 2 Cir., 100 F.2d 533; and by doing so we meant that any similarities between the play and the film, even though the result of deliberate borrowing, would not be actionable. The principle advanced in those decisions was indeed not new, though in some of our earlier decisions it had been perhaps obscured: it is that only in the "expression" of a copyrighted work does any monopoly inhere; the "theme," the "plot," the "ideas" may always be freely borrowed. We decided then, and we repeat now, that, before one descends far enough into the details of the play at bar to reach what may be called its "expression," all similarity between it and the continuity ends: in other words, that the play and the continuity are alike only in their broadest, most abstract, features. For that reason no issue remained except whether the "Woolsey continuity" "did faithfully represent the film," by which we mean the film originally exhibited. This it might fail to do in two ways: it might

contain features which the film did not contain; or it might omit features which the film did contain. Obviously, only the second would be important, since only the film was the infringement, if there was any.

After many delays the cause came on for trial in April, 1941, before Judge Galston who saw a film "screened," which the defendants said was the same as that originally exhibited, and he took the testimony of a number of witnesses. He considered the "Woolsey continuity" and—although strictly these were not properly before him—two other continuities, one known as the "shooting script" and the other as the "as released" script; and he decided that the continuity "did fairly represent the film," meaning the film as originally exhibited. The plaintiff insisted that there were fifty-nine instances in which the film, as originally produced, did not correspond with the "Woolsey continuity." Of these twenty-eight were features omitted in the film, which Judge Galston saw, but were in the continuity. These are material only upon the issue whether the film as originally produced, was different from the film which Judge Galston saw. He took up fifteen of those other features in which the film which he saw was different from the continuity, and decided that the differences were utterly irrelevant to the issue of infringement, as they certainly were. Finally, there remain fourteen other features in which there was also a similar variation; but these are, if possible, even more trivial than those picked out by Judge Galston.

Unless therefore the film which Judge Galston saw was not the film originally exhibited, the whole case is utterly without merit. The plaintiff does indeed assert this; for which she relies upon some "stills," and upon those features in the "Woolsey continuity," the "shooting script" and the "as released" script which were not in the film shown to Judge Galston. There is absolutely no reason to suppose that the "stills" were incorporated in the original film; they are separately posed, and are used for separate purposes. In any event she points out nothing in the "stills" of importance anyway. Again, nothing is to be inferred as to the character of the original film from minor variations in the several scripts, for the film is constantly changed during production. Thus there is no ground for saying that the original film differed from the film shown to Judge

Galston in any way which would be material to infringement; all the specified details are of the most complete unimportance. The plaintiff has the burden of proof, and certainly she did not prove that the defendants showed to Judge Galston a doctored film.

The action as a whole has been built up, partly upon a wholly erroneous understanding of the extent of copyright protection; and partly upon that obsessive conviction, so frequent among authors and composers, that all similarities between their works and any others which appear later must inevitably be ascribed to plagiarism.

Judgment affirmed.