**Samuel Jesse WARSHAWSKY, Plaintiff,**

v.

**John Franklin CARTER, Defendant.**

**Civ. A. No. 4698-52.**

United States District Court
District of Columbia.

July 19, 1955.

William B. Wolf, E. Fulton Brylawski, and William B. Wolf, Jr., Washington, D. C., for plaintiff.

Joseph W. Wyatt, Washington, D. C., for defendant.

MORRIS, District Judge.

This is a proceeding in which the plaintiff seeks injunctive relief, an accounting for profits, costs, and attorneys' fees from the defendant, pursuant to Title 28 U.S.C. § 1338, and Title 17 U.S.C. §§ 101, 112 and 116, for the alleged infringement of a copyrighted story, of which the plaintiff is author, entitled "Woman of Destiny," originally written by the plaintiff prior to February 29, 1916, and numerous revisions thereof, one of which culminated in a play, which was publicly produced in New York City and other summer theaters under the same title, one of which was revised in the serial publication under the title "The Heart Compelled" in the Woman's

Home Companion magazine in the issues of February, March, April and May of 1933, and which story was also published in book form under the title of "Woman of Destiny" during the year 1936, all of which were duly copyrighted. The plaintiff claims that his copyrighted story was infringed by a story of which the defendant is author entitled "Madam President," which was published serially in the issues of March 13, 20 and 27 and April 3 and 10, 1948, in Collier's Magazine, which story was also duly copyrighted. It has been stipulated between the parties that the net profits which accrued to the defendant from the sale and publication of his story are $10,000. About a year prior to the institution of the instant suit, plaintiff procured a judgment for damages, pursuant to a verdict by a jury, in a suit for infringement brought in the United States District Court for the Southern District of California against the publisher of the defendant's story, and in which suit the defendant was not a party.

The plaintiff alleges that the defendant "knowingly followed the plot and the theme of plaintiff's work, intentionally adopted leading characters therefrom and copied largely therefrom, paraphrasing plaintiff's material in many instances."

The theme of both stories is that of a woman becoming president of the United States. In each case the leading character is a woman who has attained some political prominence, and who is ambitious to secure national recognition of a program to which each is dedicated. In both stories there is a political leader unsympathetic, or even hostile, to the program so advocated. In both stories the leading character gains a position of strength in the national political convention which results, with various and somewhat different maneuvering, in the nomination of the leading character as vice president on the national ticket; in both stories this was to the discomfiture of the party leader. Neither story deals with the progress of the ensuing election, but in both instances the nominees were elected, and the leading character in each becomes vice president. Thereafter the president in the plaintiff's story dies suddenly of a heart attack, and the leading character becomes president; and in the defendant's story the president becomes mentally incapacitated, and the leading character assumes the office of president. In the plaintiff's story a declaration of war had been made on the eve of the leading character becoming president, and her incumbency was opposed by the party leader, who did not want the war to be interfered with, and originally by all of the cabinet members. In the defendant's story the party leader and cabinet members also opposed the incumbency of the leading character as president, and, as in the defendant's story, threatened resignation at a meeting of the cabinet members. In both stories evidence of discreditable action by the party leader had been secured and was used to stifle further opposition from that source, and to enlist such party leader in the woman president's administration. In the plaintiff's story the objective of the woman president was achieved in that the declared war was brought to an immediate peaceful conclusion, with apparent popular approval, and the story closes with her still in office as president. In the defendant's story the objective of the woman president, which was the enactment of laws improving the general social welfare, with particular reference to veterans, made substantial progress with promise of ultimate success, but was not finally achieved. She, feeling it wise that she no longer remain in office, married her secretary of state, who, upon her resignation, under legislation enacted since her election as vice president returning the succession of the presidency to the cabinet members, became president.

Each of these stories differ widely in the personalities of the several characters, although many of them perform similar functions in advancing the plot of the story. The emphasis of each story is quite different, though unquestionably they both lead to the selection of a

woman president by way of her original nomination and election as vice president. The love interests are quite different. The dynamic character in the defendant's story who turns to the leading character's advantage the various political trickery and manipulations of the party leader finds no real counterpart in the plaintiff's story, though unquestionably political trickery and double-crossing tactics play a part in both, but this feature is not as prominent nor as realistic in the plaintiff's story as in the defendant's.

■ There can be no question that there are many and substantial similarities in the themes of the two stories, nor, however, can there be any doubt that substantially all of these similarities are those which would normally occur in two stories dealing with a woman becoming president of the United States. There is, of course, no infringement simply because one person writes and publishes a story upon the same theme previously used by another, even though copyrighted. To be infringement, there must be a copying, intentional or unintentional, of the work done by another, and this does not occur simply by writing on the same subject or theme. Similarity can, of course, occur from copying, but that may also occur by reason of the subject matter and setting with which both stories deal. Certainly there can be no property right in the plaintiff by reason of his copyrighted story on the subject matter of a woman becoming president of the United States, and it would be naive indeed to assume that one could be nominated and elected as such instead of succeeding as an elected vice president. There may or may not be any verity to political trickery, manipulation and double-cross dealings in political conventions, but one thing is very certain, and that is that there is no novelty or property right in the view that there is. It is quite unrealistic to assume that any woman could aspire to be, much less succeed in being, nominated as a vice presidential candidate without some substantial support and backing for an advocated program that had some appeal among a substantial number of voters. There can hardly be said to be any novelty or property right in this idea, and so throughout both stories, it seems more reasonable that the many similarities that do occur are those which are almost compelled by political imperatives rather than to conclude that which is absolutely and emphatically denied by the defendant, that they are the result of either reading or copying the story of the plaintiff.

■ It has been authoritatively stated that there can be no infringement without access and similarity. This is unquestionably true, but the converse does not follow—that, simply because there has been access and there are similarities, such are the result of copying. If by access is meant the opportunity of a person to have seen, to have read, and to know the work of another, there can be no question in this case that there was such access. The various publications of the plaintiff's story, the production of it in dramatic form in certain summer theaters, articles published about it in newspapers and book reviews, which made some mention of the story, and the filing of copies in the copyright office, which were available to the public for inspection, all afforded an opportunity which possibly the defendant could have availed himself of to become familiar with such story. In its dramatic form a copy was turned over to a literary agent for handling, which agent subsequently handled certain business transactions respecting the defendant's story. The defendant, who for many years has been intimately familiar with political matters and has done much writing in connection therewith, absolutely denies any knowledge from any of these sources, or any other, respecting the plaintiff's story. Again, access and similarities are but circumstances from which a logical inference of infringement may be reached, but like other circumstantial evidence, such conclusion cannot be reached

if they are susceptible of any reasonable inference other than the guilty one of infringement, and here I am convinced that the circumstances do not justify the conclusion that the defendant's story was not an independent composition of his own. I am not unmindful that the verdict of a jury, and a judgment thereon, in the United States District Court for the Southern District of California reached a different conclusion. It is interesting, however, in that connection that the jury added to its verdict the statement: "In rendering this verdict in favor of the plaintiff, we the members of the jury unanimously wish to state that we feel the infringement was not intentional on the part of J. Franklin Carter, Jr." As heretofore stated, in certain cases there can, of course, be unintentional infringement. It is charged in the instant case, however, as heretofore stated, that the defendant "knowingly followed the plot and the theme of the plaintiff's work, intentionally adopted leading characters therefrom and copied largely therefrom, paraphrasing plaintiff's material in many instances." It is beyond my comprehension, however, that this could be done without a deliberate intention to do so, and the whole force of the plaintiff's theory of the case rests upon the premise that this was done. I cannot reach the conclusion that there was either any intentional or unintentional infringement here, and judgment will be entered accordingly.

I do not doubt at all that the plaintiff is sincerely convinced that there has been an infringement of his story by the defendant. Unless subjected to a very critical objective analysis, one could easily reach the conclusion, as did the jury in the California case, that there was piracy. Certainly after the judgment in that case, the plaintiff could well feel justified in pursuing this proceeding against the defendant. I, therefore, do not feel that, in the exercise of the discretion provided by the statute, I should award attorneys' fees to the defendant against the plaintiff, though, of course,

the costs of the case will be awarded the defendant.

Counsel will prepare appropriate findings of fact, conclusions of law, and decree to carry the judgment here announced into effect.