**Steven GETHERS, Plaintiff,**

v.

**William P. BLATTY, Doubleday & Company, Inc., a corporation, Columbia Pictures Corporation, a corporation, Defendants.**

**No. 67–470.**

United States District Court
C. D. California.
Feb. 26, 1968.

Simon Taub and J. William Hayes, Beverly Hills, Cal., for plaintiff.

Mitchell, Silberberg & Knupp, Charles A. Collier, Jr., Los Angeles, Cal., for defendant, Columbia Pictures Corp.

Rosenfeld, Meyer & Susman, Victor S. Netterville, Beverly Hills, Cal., for defendants, William P. Blatty and Doubleday & Co., Inc.

### MEMORANDUM OPINION AND DECISION ON MOTIONS FOR SUMMARY JUDGMENT

WHELAN, District Judge.

Defendants have moved for summary judgment in this action wherein plaintiff sues for damages for copyright infringement and for unfair trade practices and unfair competition against plaintiff, as well as for an injunction restraining further infringement of plaintiff's copyright. The first count of the complaint charges infringement of plaintiff's play by the novel written by defendant Blatty, hereinafter Blatty, and published by defendant Doubleday & Company, Inc., hereinafter Doubleday, and the second count of the complaint charges defendants with unfair trade practices and unfair competition; but both counts are based upon plaintiff's contentions that the defendants have infringed plaintiff's copyright. Plaintiff's play is "A Cook for Mr. General" coprighted in 1961 and Blatty's novel is "Twinkle, Twinkle, Killer Kane" copyrighted in 1966.

The parties have stipulated that the Court may consider the said play and the said novel as exhibits and evidence upon the hearing of the motions of defendants for summary judgment and the Court may likewise consider the screen play entitled "Twinkle, Twinkle, Killer Kane" written by Blatty for defendant Columbia Pictures Corporation, hereinafter Columbia. There are no genuine disputes as to material facts in this matter and for the reasons hereinafter set forth the Court concludes that this is a proper action in which to render summary judgment.

The background facts of the case are as follows: After the copyright by plaintiff of his play, Columbia acquired from plaintiff screen rights to the play and as a part of the agreement for such rights promised plaintiff that upon the making of a screen play appropriate credit would be given to plaintiff, to the effect that the picture is based upon or adapted from plaintiff's said work. Thereafter and on January 15, 1965, Columbia and Blatty entered into an agreement whereby Blatty was engaged to adapt plaintiff's said work under its new tentative title, "Twinkle, Twinkle, Killer Kane", for the screen. Sometime before January 31, 1966, Doubleday and Blatty entered into an agreement for a novel by Blatty under the title "Twinkle, Twinkle, Killer Kane." Subsequently such novel was

written, published and copyrighted as aforesaid.

The Court has carefully read and considered both plaintiff's play and the alleged infringing novel and concludes therefrom that there is no substantial similarity between the two works.

■ The Court may grant summary judgment where the Court has before it in evidence and has read the work claimed to be infringed and the alleged infringing work. Christianson v. West Pub. Co., 149 F.2d 202, 203 (9th Cir. 1945); Van Camp etc. v. Westgate, etc., 28 F.2d 957 (9th Cir. 1928); Dugan v. American Broadcasting Corporation, 216 F.Supp. 763 (D.C.1963). Plaintiff so concedes. While affidavits of experts have been submitted by the parties, such type of evidence, as stated by Judge Learned Hand in Nichols v. Universal Pictures Corporation, 45 F.2d 119, 123 (2nd Cir. 1930), "contributes nothing which cannot be better heard after the evidence is all submitted"; Judge Hand refers to such type of evidence in substance as argument which properly should be heard at the bar rather than from the box.

The issue before the Court on such motion is: is there substantial similarity between plaintiff's play and Blatty's novel? This Court answers the question in the negative; thus as a matter of law defendants are entitled to summary judgment.

■ There must be substantial similarity between the protectible portions of plaintiff's work and Blatty's work before there can be infringement. This is so even where, as here, Blatty did have access to and did read plaintiff's work, —in fact did make an adaptation of plaintiff's play for the screen. Kustoff v. Chaplin, 120 F.2d 551, 560 (9th Cir. 1941).

■ The copyright owner's protectible property consists of the development, treatment and expression of such elements as theme, locale, settings, situations, ideas, bare basic plots and ordinarily characters. Dellar v. Samuel Goldwyn, Inc., 150 F.2d 612 (2nd Cir. 1945); Columbia Pictures Corporation v. National Broadcasting Co., 137 F.Supp. 348, 353 (S.D.Calif.1955) citing Dymow v. Bolton, 11 F.2d 690 (2nd Cir. 1926), and other authorities. The elements mentioned in themselves are not protectible. Columbia Pictures Corporation v. National Broadcasting Co., supra, at p. 353. It is the "expression of ideas" not the ideas themselves that is protected. Dugan v. America Broadcasting Corporation, supra, at p. 765.

The following are summaries of significant elements of each of the works pointing up the lack of substantial similarity between them.

### SUMMARY OF "A COOK FOR MR. GENERAL"

Locale: The locale of the play is an Army Rehabilitation Center located on an island somewhere in the Pacific during the year 1944.

Settings: The settings include the quarters of the Commandant (General Rivers), the Company Area, Guardhouse Cell and Court Martial Room.

Theme: The story of how the Commandant of the Center changed from an irritable malcontent frustrated because of his assignment to the Center and his inability to obtain active military service to a thoughtful man preferring to continue with rehabilitation work in place of accepting an offered active military position apparently because of the beneficial effect upon his stomach and character created by Tom, his cook, with the companion story of how Tom gains confidence and self-respect through the friendship of the Commandant.

Characters: The principal characters are the Commandant (General Rivers) and Tom, the Greek born soldier, who, because of a boyhood experience, flies into a rage whenever anyone touches his shoulder with resultant devastating physical effect on the unfortunate person touching the shoulder.

Other Characters: The other characters with the exception of Captain Farley and possibly Dr. Chalmers are undeveloped except in a sketchy slapstick manner. It cannot be said that any of the minor characters among the inmates of the Center show psychopathic characteristics other than one Kroy; the balance of them could be said to be merely insubordinate in one fashion or another. If any indicates abnormal sexual tendencies, such indication is ambiguous and of no substantial significance in the treatment of the play. Farley is a competent, dedicated junior officer while Chalmers is a former gynecologist in civilian life who is inadequate for no particularly evident reason in his present role as medical doctor for the Rehabilitation Center. The other members of the staff of the Center are of no significance.

Mode or Tone of Expression: The tone or mode of expression of the play is either coarse, as in its earlier part, or farcical if not slapstick in its later scenes. General Rivers referred to the Center as "a middle point between military service and a Federal Penitentiary,"—a place from which its last group returning to service included five men later indicted for serious crimes and seven men later becoming deserters. The play has the traditional, Hollywood style, "happy ending" with General Rivers displaying nobility in his words and action; Tom the Greek has become kindly though still capable of ferocity; and the inmates of the Center have become generally agreeable to discipline. The play is a light comedy with no evident purpose other than that of pure entertainment.

### SUMMARY OF THE NOVEL "TWINKLE, TWINKLE, KILLER KANE"

Locale: An Air Force Rehabilitation Center located at Malibu near Los Angeles in Southern California during the present day.

Settings: The settings for the novel are generally at the Center, the former home of the now deceased "horror-movie" star, Bela Slovik, with some action taking place in the adjacent school grounds and buildings of Miss Endicott's College for Girls, at a nearby Catholic Church, and with flashbacks to the Korean jungle and an epilogue in a space vehicle leaving its launching pad.

Theme: While it is the story of a military combat hero, Colonel "Killer Kane," it is also, and perhaps even more importantly, a serious philosophical, metaphysical, and theological treatment of modern man's confusion with his environment. "Killer Kane," the killer of men with his bare hands, who is given an opportunity to impersonate another Colonel Kane (who is a renowned psychologist) as the new Commander of the Rehabilitation Center takes the opportunity. He receives the notice of his new assignment (made possible by a computer's mistake) while he is at his post in the Korean jungle. As the story progresses, his mind, apparently temporarily unbalanced while he was fighting in Korea, is gradually more and more beset by his anguish and his imagery, including those of allegorical settings of which he is a principal figure, to the point that he commits suicide in the last pages of the story.

Characters: The character of Colonel Kane is very powerfully drawn. He is a mixture of killer and mystic; he is both tiger-like in his physical manifestations of anger and gentle in his dealings with the inmates under his care at the Center; his preoccupation with the sanity or insanity of the inmates obscures the transition of his own mind to complete instability. The fact of his split personality becomes more and more clear and is evidenced at his death by his turned-collar, the symbol of the priest as he saw himself to be in his thoughts.

Cutshaw, the premier astronaut who in order to avoid the first voyage to the moon had feigned insanity to secure commitment to the Center, is a well developed character albeit a mental foil whose

philosophical and theological meanderings enable the reader to see into the working of Kane's mind, as well as to provide a vehicle through which the author reenforces and adds to the philosophical message expressed through Kane.

The other characters are likewise foils for the development of the Kane character. Dr. Fell, the civilian brain surgeon who is now the drunken Center medical director, the various inmates, each of whom is either insane or has feigned insanity to avoid return to active military duty, the Center staff, and the owner and the head of the College for Girls are subordinate to the theme.

Mode or Tone of Expression: The mode or tone of expression is essentially in a semi-tragic vein although the author has succeeded in creating in Kane a character of genuinely appealing nature, one whose suicide is but the expression of madness rather than that of futility. The novel progresses in the effect it has on the reader. The apparent play-acting of the Center's inmates, the dalliance of Dr. Fell and Miss Endicott, the activities of the Center staff,—all these are of no substantial significance in the effect of the work.

■ It can be seen from the foregoing that the locale for each work is a military rehabilitation center; and it of course follows that each center has a military staff as well as the men there for rehabilitation and that certain events result in such setting. However, such similarity is minor and not protectible. Columbia Pictures Corporation v. National Broadcasting Co., supra, at p. 353.

It is established that the presence or absence of substantial similarity between two literary works is to be determined by the effect of the alleged infringing work upon the average reader,—that is to say, would such reader upon reading the Blatty novel as well as plaintiff's play find there is substantial similarity between the two. Harold Lloyd Corporation v. Witwer, 65 F.2d 1, 18 (9th Cir. 1933).

■ Certainly the reader of the novel could not consider it as a novelization of the play; nor could he find substantial similarity between the two. The play is, as has been stated, a farcical, somewhat shallow expression of ideas and plot; it has no underlying philosophy, and has the "happy ending" so traditional in comedies of stage and screen. On the other hand the novel is a serious, if not tragic, expression combining a probing of the metaphysical and the theological with the development of the character of Kane. In fact, a reading of the two works [1] leaves the Court with the impression of substantial dissimilarity of theme, situations, story line, major and minor characters and expression of ideas. Here Blatty has met the test stated in Eisenschiml v. Fawcett Publications, 246 F.2d 598, 603 (7th Cir. 1957)—he "has made an independent production" rather than a "substantial and unfair use of the complainant's work."

Thus it is clear that defendants are entitled to summary judgment on plaintiff's first cause of action.

Because plaintiff's second cause of action is based on the alleged infringement, defendants are likewise entitled to summary judgment thereon. There is here no palming off or false labeling. See Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661, and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed. 2d 669. Plaintiff's two causes of action involve but a single right, namely, the right to protection of the copyrighted play. See Hurn v. Oursler, 289 U.S. 238, 246, 53 S.Ct. 586, 77 L.Ed. 1148.

However, the Court considers that this is not a proper case for the award of

---

1. It should be remembered that we are not here concerned with the screen adaptation of plaintiff's play, which adaptation is also entitled "Twinkle, Twinkle, Killer Kane." Were it the alleged infringing work, plaintiff might well be in a better position than he here is.

attorneys' fees and denies such award to defendants.

## COLUMBIA HAS ADDITIONAL GROUND FOR SUMMARY JUDGMENT

In addition to the foregoing grounds Columbia has an additional ground for summary judgment. Before Blatty published his novel, Columbia by letter dated February 4, 1966, (Exhibit 4 attached to affidavit of Seymour P. Steinberg) advised Doubleday, as it had Blatty, that it could not give clearance for the publication of the novel without the consent of plaintiff. Hence, Columbia has not infringed plaintiff's copyright even were it held that the other defendants have so done.

The foregoing constitutes the findings and conclusions of the Court. The Court will sign a formal summary judgment, whereupon, but not before, judgment shall be entered.