Virginia GARDNER, Plaintiff,

v.

Louis NIZER and Doubleday &
Co., Inc., Defendants.

No. 73 Civ. 4982.

United States District Court,
S. D. New York.

Feb. 24, 1975.

Emile Z. Berman & A. Harold Frost, New York City, for plaintiff; Arnold I. Katz, New York City, of counsel.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for defendant Louis Nizer; George Berger, New York City, of counsel.

Satterlee & Stephens, New York City, for Doubleday & Co., Inc.; Robert M. Callagy, New York City, of counsel.

## MEMORANDUM

BONSAL, District Judge.

Defendants Louis Nizer ("Nizer") and Doubleday & Company, Inc. ("Doubleday") move pursuant to F.R.Civ.P. 56 for summary judgment dismissing plaintiff Virginia Gardner's complaint on the ground there is no genuine issue as to any material fact.

Plaintiff, author of the book *The Rosenberg Story* ("plaintiff's book"), a biographical study of Julius and Ethel Rosenberg, consisting of 126 pages and approximately 47,900 words, published by Masses & Mainstream, Inc. ("Masses") in 1954, instituted this action contending that the defendants infringed the statutory Copyright No. A 146205, registered in the name of Masses but assigned to plaintiff, by publishing and placing on the market for sale *The Implosion Conspiracy* ("defendants' book"), a book of 495 pages and 228,900 words, written by defendant Nizer and published in 1973 by defendant Doubleday.

Masses obtained a copyright on plaintiff's book, No. A 146205, in 1954. In the copyright application the publisher indicated that the book was a "serial republished in book form with new matter" and stated that it

"Originally appeared as series of 16 articles under title 'Two 'Immortals' [sic] by Virginia Gardner, in *The Worker* (weekly). Now includes added material on Rosenbergs."

In her affidavit,[1] plaintiff alleges that her copyright interests protect her entire book, *The Rosenbergs*, because rights to the original series of articles, held by the publishers of *The Worker*, Publishers New Press, Inc. ("New Press"), were transferred orally by an executive in the Editorial Department of New Press to Masses and because Masses thereafter assigned to plaintiff the rights obtained by its Copyright No. A 146205 as well as those obtained from New Press.

Defendants answered plaintiff's complaint by pleading general denials and asserting several affirmative defenses. Thereafter defendants filed the instant motion for summary judgment.

*Extent of Plaintiff's Copyright Interest*

Plaintiff states in her answer to defendants' Interrogatory No. 2 that she is suing on Copyright No. A 146205, which was validly assigned to her by letter from the registered copyright holder, Masses.

■ This assignment to plaintiff of Copyright No. A 146205 gives her a copyright interest in the matter published in her book which did not previously appear in the series of articles "Two Immortals", published in *The Worker*, since only new and original matter is protected under the copyright laws. *See* 17 U. S.C. § 7;[2] Puddu v. Buonamici. Statu-

---

1. In the interests of justice, the Court has considered the plaintiff's affidavits, despite several procedural defects.

2. Section 7 of the Copyright Law provides: ". . . works republished with new matter, shall be regarded as new works sub-

ary, Inc., 450 F.2d 401, 402 (2d Cir. 1971); M. M. Business Forms Corp. v. Uarco, Inc., 472 F.2d 1137, 1139 (6th Cir. 1973); G. P. Putnam's Sons v. Lancer Books, Inc., 239 F.Supp. 782 (S.D. N.Y.1965); M. Nimmer, Nimmer on Copyright, § 10, at 32, § 39, at 165 (1974 ed.).

■ In addition, even if New Press obtained copyrights on the articles "Two Immortals",[3] the oral transfer by New Press to Masses of rights to use the material from the articles did not give plaintiff any legally cognizable copyright interest in the articles because an assignment of a copyright secured under the federal copyright laws must be made by an "instrument *in writing* signed by the proprietor of the copyright." *See* 17 U.S.C. § 28 (emphasis added).

Therefore, the only matters in which plaintiff has an enforceable copyright interest are those 20 passages she enumerated in her answer to defendants' Interrogatory No. 6(a) as previously unpublished material. *See* G. P. Putnam's Sons v. Lancer Books, Inc., *supra*.

*Validity of Plaintiff's Claims of Infringement*

By plaintiff's own description, her book is a "biographical study" of the Rosenbergs. The passages on which she claims infringement and for which she has an enforceable copyright interest are related to the proceedings in the United States Supreme Court in 1953 subsequent to the Rosenbergs' conviction, the petitions for clemency submitted on their behalf to the President, the appeals for mercy by various persons in Europe and the articles in the national and foreign press. At the time of these events, they were the subject of innumerable newspaper reports, magazine articles, pamphlets and books and have been the source of plays and television documentaries over the last 21 years. Thus they clearly fall within the realm of "historical facts and events".

Both plaintiff and defendant Nizer state that in addition to many of these news sources and discussions with various people, they each relied upon interviews with Gloria Agrin, Esq., one of the attorneys for the Rosenbergs, for descriptions of the events that transpired during the last stages of the Rosenbergs' appeals for clemency.

In considering the protection afforded by copyrights relating to historical events such as contained in plaintiff's biographical study, Judge Leon Yankwich stated the applicable principle:

"One cannot build a story around a historical incident and then claim exclusive right to the use of the incident. If originality can be claimed in opposing Aguinaldo to Funston, as the plaintiff claimed in open court, then all the novels, short stories, and dramas written about the Civil War, opposing Grant and Lee, might never have been written after the first one because the author of the first one could have claimed exclusive right to the product."

Echevarria v. Warner Bros. Pictures, Inc., 12 F.Supp. 632, 638 (S.D.Cal. 1935).

■■ Therefore, historical facts and events in themselves are not protected by copyright. Rosemont Enterprises, Inc. v. Random House, Inc., 366 F.2d 303, 307 (2d Cir. 1966), cert. denied, 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967). Because biographical works are basically personal histories, two biographies of an individual will necessarily be similar in content and copyright protec-

---

ject to copyright . . . but the publication of any such new works shall not affect the force or validity of any subsisting copyright . . . or be construed to imply an exclusive right to such use of the original works, or to secure or extend copyright in such original works."
17 U.S.C. § 7.

3. Plaintiff has produced only one application for registration of a copyright, specifically No. B5 25185, which covers the September 20, 1953 installment of the series of articles, published in Volume XVIII, No. 38 of *The Worker*.

tion is often denied. *See* Rosemont Enterprises, Inc. v. Random House, Inc., *supra.* However, plaintiff's copyright entitles her to protection of her literal form of expression insofar as her work evidences originality. Nimmer, *supra* §§ 29.1, 29.2, at 127–29.

■■■ Copyright infringement will be found only when there is "substantial" or "material" copying, appropriation or taking of the copyrighted work. *See* Alexander v. Irving Trust Co., 132 F.Supp. 364 (S.D.N.Y.1955), aff'd, 228 F.2d 221 (2d Cir. 1955), cert. denied, 350 U.S. 996, 76 S.Ct. 545, 100 L.Ed. 860 (1956); Oxford Book Co. v. College Entrance Book Co., 98 F.2d 688 (2d Cir. 1938). Indeed, the copying must be even more substantial *to* constitute infringement when historical works are involved. *See* Oxford Book Co. v. College Entrance Book Co., *supra* at 691; Nimmer, *supra* § 29.2, at 128–29.

■■ A comparison of the phrases identified by plaintiff in defendants' book with the respective passages in plaintiff's work convinces the Court that insufficient similarity exists to warrant a finding of infringement. Typical of plaintiff's claims is the following instance of alleged infringement. From her own book, plaintiff quotes:

"Manny was still asleep when they received a summons to a telephone in the clerk's office, and the information that a delegation of clergymen leaving the White House told reporters the President indicated he would not com-

mute the sentence. . . . They awoke Manny to tell him."

*The Rosenberg Story,* at 112, lines 24–29.

And from defendants' book, plaintiff quotes:

" 'Have you heard,' said the reporter from the Washington *Post,* 'that the President was visited by a group of ministers today, and that he said, he did not intend to interfere in the Rosenberg case?' "

*The Implosion Conspiracy,* at 427, lines 14–16.

Another illustration of infringement relied upon by plaintiff is:

"Finally, too, the long censored news of the mass protests in Europe broke through the press."

*The Rosenberg Story,* at 115, lines 31–32.

which she alleges was copied by defendants in the following sentence:

". . . they clung to the only news which was consistently good— public clamor throughout the world against their execution."

*The Implosion Conspiracy,* at 453, lines 11–12.

As is evident from these illustrative quotations, most of the allegedly infringing passages merely recount factual events with little or no similarity in style or form of expression. In only three instances could sentences in defendants' book be said to have been copied in part from plaintiff's book,[4] but these com-

---

4. The three passages are as follows:

A. From plaintiff's book:

"Attorney Finerty had to move fast to make the motion on the habeas corpus proceedings, or the court would adjourn for the summer. He did. He fairly sprinted, for all his almost 70 years, to the podium." *The Rosenberg Story,* at 109, lines 6–8.

From defendants' book:

"Before the judges could rise . . . Finerty sprinted to the podium . . ." *The Implosion Conspiracy,* at 426, lines 20–22.

B. From plaintiff's book:

"In the dramas of Shakespeare or the Greek tragedians, national crises or disas-

ters or the stirring affairs of state, often are depicted in a setting of storm and thunder, a wild wind, splitting heavens and shaking firmament." *The Rosenberg Story,* at 113, lines 1–4.

From defendants' book:

"In Greek tragedies, the dramatic technique of *deus ex machina* was employed to solve impossible problems." *The Implosion Conspiracy,* at 429, lines 1–2.

C. From plaintiff's book:

"They learned that Justice Black, facing an operation, had departed at once for a hospital leaving word he would see no one including the Rosenberg attorneys. Shortly before 6 o'clock, however, they stood

prise an infinitesimal portion of each publication (*cf.* Higgins v. Baker, 309 F.Supp. 635, 637 (S.D.N.Y.1970)), and do not constitute a "substantial taking" of plaintiff's work. In any event, there is no infringement since the first two instances represent immaterial aspects of the Rosenberg's story and the other passages are descriptions of historical facts which both authors derived from similar sources, such as interviews with Gloria Agrin and statements made by Justice Douglas during oral application for a stay of execution, and which hardly could have been simply stated in a different fashion. *See* Consumers Union of United States, Inc. v. Hobart Manufacturing Co., 189 F.Supp. 275 (S. D.N.Y.1960).

■ In addition, the doctrine of "fair use" precludes plaintiff's recovery.

"'Fair Use' is a 'privilege in others than the owner of a copyright to use the copyrighted material in a reasonable manner without his consent, notwithstanding the monopoly granted to the owner . . . .' "

Rosemont Enterprises, Inc. v. Random House, Inc., 366 F.2d at 306, quoting Ball, Copyright and Literary Property 260 (1944). The Second Circuit specifically has ruled that the fair use doctrine is applicable to biographies because of "the public benefit in encouraging the development of historical and biographical works and their public dis-

tribution", so long as the similarity is not virtually complete or verbatim. Rosemont Enterprises, Inc. v. Random House, Inc., 366 F.2d at 307, 310; Nimmer, *supra* § 145, at 651. *See* Rohauer v. Killiam Shows, Inc., 379 F.Supp. 723, 733 (S.D.N.Y.1974). Thus, even if this Court had found the defendants had copied portions of plaintiff's book, the similarity between the works is sufficiently small to permit the defendants to successfully assert the defense of fair use.

Accordingly, defendants' motion for summary judgment is granted.

Settle order on notice.

before Justice Douglas with a request to be heard.

"Miss Agrin did not go in with them but was given an account of it. 'Mr. Justice Douglas said, "look, I have my car all packed ready to leave for the West at 7 o'clock tomorrow morning. How can I do anything for you?" Manny replied in effect, how could he fail to when two persons' lives were at stake? They argued for nearly an hour . . .' " *The Rosenberg Story*, at 110, lines 18–28.

From defendants' book:

"At six o'clock in the evening, while Justice Douglas was disposing of last-minute chores and packing his books and briefs to leave for his summer vacation, Farmer and Marshall descended upon him. They sought a stay in the Rosenberg case.

"He sat silently for a while. Then, as if shaking off a bad impulse, he said, '. . . Look, gentlemen, my car is packed downstairs. I am driving to the Coast in the morning. I have no time to study the matter. Why don't you make your application to Judge Black or one of the other judges?'

"'We have learned that Judge Black has gone to the hospital to have some minor surgery. He left word with his secretary that he will entertain no petitions, and he even included the Rosenberg case by name. No other judge can be reached. . . . Your Honor, two lives are at stake. Should they be snuffed out because this point was not made previously?' " *The Implosion Conspiracy*, at 429, lines 26–27; at 430, lines 1–2, 17–27.