**Margaret Walker ALEXANDER, Plaintiff,**

v.

**Alex HALEY, Doubleday & Company, Inc., and Doubleday Publishing Company, Defendants.**

**Nos. 77 Civ. 1907 (M.E.F.), 77 Civ. 1908 (M.E.F.).**

United States District Court, S. D. New York.

Sept. 20, 1978.

As Amended Sept. 21, 1978.

---

Gilbert A. Holmes, New York City, Brown, Alexander & Sanders, Jackson, Miss., for plaintiff; Firnist J. Alexander, Jr., Everett T. Sanders, Jackson, Miss., of counsel.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for defendant Alex Haley; George Berger, New York City, of counsel.

Satterlee & Stephens, New York City, for defendants Doubleday & Co., Inc., and Doubleday Publishing Co.; Robert M. Callagy, New York City, of counsel.

## OPINION

FRANKEL, District Judge.

Defendants' motions for summary judgment were held by the court pending an evidentiary hearing and report by Magistrate Gershon on one possibly material question of fact. The reports and recommendations are now before the court along with comments and objections by the parties. Upon all the original submissions, as thus amplified, the court concludes that defendants' motions should be granted.

### I.

The plaintiff, Margaret Walker Alexander, initiated twin copyright infringement and unfair competition actions against Alex Haley and Doubleday Publishing Company and Doubleday & Co., Inc., his publishers, based upon alleged similarities between the book *Roots,* written by Haley, and the novel *Jubilee* and the pamphlet *How I Wrote*

*Jubilee* ("HIWJ"), both written by the plaintiff. *Jubilee* was copyrighted in 1966, and *HIWJ* in 1972. The copyright for *Roots* was registered in 1976, although a portion of the material which later became *Roots* appeared under copyright in *The Reader's Digest* in 1974.

Both *Roots* and *Jubilee* are amalgams of fact and fiction derived from the sombre history of black slavery in the United States. Each purports to be at least loosely based on the lives of the author's own forbears. Differences in scope are, however, more striking than the similarities. *Jubilee* is a historical novel which recounts the life of Vyry (described as the author's great grandmother) starting around 1835, from her childhood and early adulthood in slavery, through the Civil War years and into Reconstruction. The novel is divided roughly into thirds, marked out by the beginning and the end of the Civil War. *HIWJ,* as its title suggests, is an account of the author's career, including her awakening interest in her family's and people's past, her many years of research, her struggle to complete the manuscript amidst other obligations, and an explanation of the mixture of fact and fiction in *Jubilee.*

*Roots* covers a much broader canvas, commencing its narrative in Africa and continuing through multiple generations of a single family, described as the ancestors of the author. The story commences in about 1750 and continues through the birth and life of the author. Well over a fifth of the book is set in Africa, and approximately three-quarters covers a period antedating the time of *Jubilee.* In the closing pages the author relates the story of his own life, the evolution of his concern with his family's past, his developing interest in writing, his research and the completion of his manuscript. Particular emphasis is placed upon an account of the trail the author says was followed to the unearthing of the African roots of his family tree.

### II.

The case came before the court initially on defendants' motions for summa-

ry judgment. In order to succeed in her claims of infringement plaintiff has the burden of proving two elements: actual copying of her works by the defendant and substantial similarity between the accused work and the original. *Arnstein v. Porter,* 154 F.2d 464, 468 (2d Cir. 1946); *Heim v. Universal Pictures Co.,* 154 F.2d 480, 487 (2d Cir. 1946). Actual copying may be established by direct proof or by proof of access plus a demonstration of similarities or other factors circumstantially evidencing copying. *Arnstein v. Porter, supra,* 154 F.2d at 468.

Recognizing that the question of actual copying is not susceptible of resolution on papers, defendants chose to proffer a concession of this element to clear the way for a motion predicated on the argument that the kind of similarities relied upon by the plaintiff are not actionable as a matter of law. Finding the defendants' papers highly compelling, the court was nonetheless reluctant to decide the motion solely on the papers concerning the question of similarity, doubting that this question is necessarily sealed off hermetically from the question of copying on which defendants offered to concede *arguendo.*[1] Cf. *MacDonald v. Du Maurier,* 144 F.2d 696, 701 (2d Cir. 1944); *Dellar v. Samuel Goldwyn, Inc.,* 104 F.2d 661 (2d Cir. 1939). As against the proposed concession, plaintiff pressed for an opportunity "to demonstrate the strength of [her] case on copying." Perhaps out of excessive

caution, but believing at any rate that the case should be as ripe as possible for decision here and on appeal, the court concluded that an evidentiary record should be made on that subject. Accordingly, the court declined to adopt the proffered concession and referred the charge of actual copying to Magistrate Gershon pursuant to 28 U.S.C. § 636(b)(1)(B), to hold an evidentiary hearing and report recommended findings and conclusions. The order of reference directed that the Magistrate was to consider only direct proof of access and copying. The court reserved to itself the issue of substantial similarity and the question of whether any similarities supported an inference of actual copying from proof of access, should the latter be established before the Magistrate.

### III.

The Magistrate has reported that the plaintiff has met her burden of proof as to the defendant Haley's access to *Jubilee,* but has failed to establish this essential element of her *prima facie* case as to *HIWJ.* Both recommended findings are fully supported by the record, and are adopted by the court.[2]

But this carries plaintiff only a small and totally insufficient way toward the vindication of her claims. Upon the record as a

---

1. Looking at things from the opposite direction, it is commonplace that similarity may be probative of copying. *Arnstein v. Porter, supra,* 154 F.2d at 468.

2. In objecting to the Magistrate's Report, counsel for plaintiff have deviated more often than they should from fundamental rules of evidence and procedure. Their objections arrived late, and should perhaps be ruled out of consideration altogether, as defendants suggest. Though that drastic course is not followed, other blemishes must be noted and improper portions disregarded. Having had ample opportunity to be at the evidentiary hearing, plaintiff did not testify there. It was indicated that she might appear on rebuttal or be available to defendants if they wanted her. It was never intimated that she wished to testify and could not, or that she might desire an adjournment for such a purpose. Now, with the hearing long closed, she submits an affidavit on the issue of access,

observing toward the end: "Because of my husband's illness, I was unable to attend the Evidentiary hearing in this cause." This won't do. She could have been deposed. She could have sought other relief. Her affidavit will be given no weight. If it were weighed, it might have negative impact anyhow. One startling aspect is its verbatim quotation of what is sworn to have been a letter from defendant Haley. No copy is attached.

In a comparably informal fashion, plaintiff's counsel include in their objections an alleged quotation of the defendant Haley from *Playboy Magazine.* But this was offered at the hearing, after Mr. Haley had testified, and objected to. The offer was withdrawn.

Then, the same set of objections appends a purported analysis of another lawsuit in *The Village Voice.* This was not offered at the hearing. It certainly has no place here now.

whole, including the helpful Report, if it were necessary to do so, the court would now be prepared to find that Haley did not in fact copy anything, or attempt to copy anything, or inadvertently reproduce anything, from plaintiff's works. But even that is not necessary now to defeat plaintiff's charges. What is decisive is that, after full opportunity to portray the strength of her accusation of copying, plaintiff has failed. She has shown access to her novel, if not her pamphlet, and, as will appear, a catalogue of alleged similarities that is strained, insignificant, and devoid of factual or legal substance. Apart from Haley's wholly credible denials of copying, we are now comfortably past any speculation as to possible interrelations between the issue as to copying and the issue, on which defendants moved, as to substantial similarities. Whether or not these issues can be always and everywhere tightly separated, it is clear now that there is no trace of "spillover" in plaintiff's favor from the claim of copying to the claim of similarities sufficient in law to ground a charge of infringement. If, as is now to be recorded, the court would decide the latter issue, standing alone, for defendants, that ruling is now ripe as a basis for summary judgment without any lurking concern whether a mere "concession" as to copying for the sake of argument might serve to obscure factors pointing toward a different result.

### IV.

■ In order to demonstrate the alleged similarity between *Roots* on the one hand and *Jubilee* and *HIWJ* on the other, plaintiff submitted several sets of affidavits and answers to interrogatories setting forth passages from *Roots* along with passages from the plaintiff's works, with certain portions underscored to highlight the asserted similarities. Plaintiff also submitted an af-

fidavit commenting *seriatim* on the alleged similarities.

After consideration of each of the numerous similarities suggested in the plaintiff's submissions, the court concludes that none supports the claim of infringement. By this the court means both that (1) no support is given to the claim of copying by such similarity as is shown,[3] and (2) that the claimed similarities do not, as a matter of law, constitute actionable substantial similarity between the works.[4]

■ Substantial similarity is ordinarily a question of fact, not subject to resolution on a motion for summary judgment. *Arnstein v. Porter, supra*, 154 F.2d at 469. In the instant case, however, defendants' argument is that such similarities as are claimed by the plaintiff are irrelevant because they relate solely to aspects of the plaintiff's works which are not protectable by copyright. The law seems clear that summary judgment may be granted when such circumstances are demonstrated. *Gardner v. Nizer*, 391 F.Supp. 940 (S.D.N.Y.1975); *Fuld v. National Broadcasting Co.*, 390 F.Supp. 877 (S.D.N.Y.1975); *Gethers v. Blatty*, 283 F.Supp. 303, 305 (C.D.Cal.1968); *Consumers Union Inc. v. Hobart Manufacturing Co.*, 199 F.Supp. 860, 861 (S.D.N.Y. 1961); *Buckler v. Paramount Pictures, Inc.*, 133 F.Supp. 223 (S.D.N.Y.1955); *Millstein v. Leland Hayward, Inc.*, 10 F.R.D. 198, 199 (S.D.N.Y.1950). Cf. *Bevan v. Columbia Broadcasting System, Inc.*, 329 F.Supp. 601 (S.D.N.Y.1971).

The court agrees with defendants; each of the similarities asserted by the plaintiff is in one or more of several categories of attributes of written work which are not subject to the protection of the copyright laws.

■ Many of the claimed similarities are based on matters of historical or contempo-

---

**3.** Thus further failing to support the element defendants were willing to concede for this motion.

**4.** So that, in the strict logic defendants pursued from the outset, plaintiff would lose even if she had proved copying. The logic was not unsound. But if the court has proceeded proper-

rary fact.[5] No claim of copyright protection can arise from the fact that plaintiff has written about such historical and factual items, even if we were to assume that Haley was alerted to the facts in question by reading *Jubilee*. See *Rosemont Enterprises, Inc. v. Random House, Inc.*, 366 F.2d 303, 309 (2d Cir. 1966), cert. denied, 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967); *Gardner v. Nizer, supra*, 391 F.Supp. at 942; *Fuld v. National Broadcasting Co., supra*, 390 F.Supp. at 882; *Greenbie v. Noble*, 151 F.Supp. 45, 65–66 (S.D.N.Y.1957); *Lake v. Columbia Broadcasting System, Inc.*, 140 F.Supp. 707, 708–09 (S.D.Cal.1956).

■ Another major category of items consists of material traceable to common sources, the public domain, or folk custom. Thus, a number of the claimed infringements are embodiments of the cultural history of black Americans, or of both black and white Americans playing out the cruel tragedy of white-imposed slavery.[6] Where common sources exist for the alleged similarities, or the material that is similar is otherwise not original with the plaintiff, there is no infringement. *Fuld v. National Broadcasting Co., supra*, 390 F.Supp. at 877;

*Costello v. Loew's Inc.*, 159 F.Supp. 782 (S.D.N.Y.1958); *Greenbie v. Noble, supra*, 151 F.Supp. at 65. This group of asserted infringements can no more be the subject of copyright protection than the use of a date or the name of a president or a more conventional piece of historical information.

■ A third species of the alleged similarities constitutes what have been called *scenes a faire*. *Reyher v. Children's Television Workshop*, 533 F.2d 87, 91 (2d Cir. 1976). These are incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic. Attempted escapes, flights through the woods pursued by baying dogs, the sorrowful or happy singing of slaves, the atrocity of the buying and selling of human beings, and other miseries are all found in stories at least as old as Mrs. Stowe's. This is not, and could not be, an offense to any author. Nobody writes books of purely original content. In any event, the plaintiff misconceives the protections of the copyright law in her listing of infringements by including such *scenes a faire*.[7] *Reyher v. Children's Television*

ly, this may be another case of the kind in which logic alone is not enough.

5. This category covers a large number of what plaintiff cites as assertedly infringing passages. For instance, the passages from page 32 of *Jubilee* and page 521 of *Roots* cited by the plaintiff share only a reference to New Orleans and the women of mixed race found there. Another example reveals only two treatments of the theme of the westward movement and settlement in the United States (*Jubilee*, p. 43; *Roots*, pp. 287, 595.) Yet another is based on the historical fact of slave uprisings and the repressive measures taken to combat them. (*Jubilee*, pp. 51, 83; *Roots*, pp. 279, 282.) The record is replete with other examples which the court need not discuss. See, e. g., *Jubilee*, p. 91, *Roots*, p. 277 (Quakers as abolitionists); *Jubilee*, p. 146, *Roots*, p. 282 (process of manumission); *Jubilee*, p. 184, *Roots*, p. 626; *Jubilee*, p. 19, *Roots*, p. 373; *Jubilee*, p. 47, *Roots*, p. 429; *Jubilee*, p. 82, *Roots*, p. 387; *Jubilee*, p. 192, *Roots*, p. 572; *HIWJ*, p. 18, *Roots*, p. 671. This listing, like those that follow, is not intended to be exhaustive. With respect to each category, the court has made the judgment reported—that the instances embraced are non-actionable because they are thus classifiable under at least one such heading.

6. One example is the references to laying out the body of a deceased on a "cooling board." (*Jubilee*, pp. 68–69; *Roots*, p. 355.) Uncontroverted affidavits show that this is an authentic piece of folk custom. See, also, *Jubilee*, p. 110, *Roots*, p. 518 (folk herbal medicines); *Jubilee*, p. 119, *Roots*, pp. 562–63 (cockfighting); *Jubilee*, p. 143, *Roots*, p. 310 ("jumping the broom" as a folk rite of marriage); *Jubilee*, p. 285, *Roots*, p. 644; *Jubilee*, p. 20, *Roots*, p. 364; *Jubilee*, p. 341, *Roots*, p. 365; *Jubilee*, p. 339, *Roots*, p. 247; *Jubilee*, p. 319, *Roots*, p. 212; *Jubilee*, p. 484, *Roots*, p. 327; *Jubilee*, p. 39, *Roots*, p. 383; *Jubilee*, p. 98, *Roots*, p. 396; *Jubilee*, p. 36, *Roots*, pp. 236, 438; *Jubilee*, p. 138, *Roots*, p. 439; *Jubilee* p. 100, *Roots*, p. 480; *Jubilee*, pp. 67, 83, 100, *Roots*, p. 418.

7. Examples include scenes portraying sex between male slaveowners and female slaves and the resentment of the female slave owners (*Jubilee*, p. 44, *Roots*, p. 436); the sale of a slave child away from her family and the attendant agonies (*Jubilee*, pp. 84–85, *Roots*, pp. 424–26); the horror of punitive mutilation (*Jubilee*, p. 114, *Roots*, p. 224); and slave owners complaining about the high price of slaves (*Jubilee*, p. 113, *Roots*, p. 397). See, also, *Jubilee*, p. 145, *Roots*, p. 403; *Jubilee*, p. 169, *Roots*, p.

*Workshop, supra ; Fuld v. National Broadcasting Co., supra,* 300 F.Supp. at 881; *Greenbie v. Noble, supra,* 151 F.Supp. at 65, 69; *Warshawsky v. Carter,* 132 F.Supp. 758, 760 (D.D.C.1955).

█ Yet another group of alleged infringements is best described as cliched language, metaphors and the very words of which the language is constructed. Words and metaphors are not subject to copyright protection; nor are phrases and expressions conveying an idea that can only be, or is typically, expressed in a limited number of stereotyped fashions. *Reyher v. Children's Television Workshop, supra,* 533 F.2d at 91; *Bein v. Warner Brothers Pictures, Inc.,* 105 F.2d 969 (2d Cir. 1939); *Richards v. Columbia Broadcasting System, Inc.,* 161 F.Supp. 516, 518 (D.D.C.1958). Cf. *Herbert Rosenthal Jewelry Corp. v. Kalpakian,* 446 F.2d 738, 742 (9th Cir. 1971). Nor is the later use of stock ideas copyright infringement. *Bevan v. Columbia Broadcasting System, Inc., supra,* 329 F.Supp. 601, at 606; *Burnett v. Lambino,* 204 F.Supp. 327, 332 (S.D.N.Y. 1962); *Echevarria v. Warner Brothers Pictures, Inc.,* 12 F.Supp. 632, 635 (S.D.Cal. 1935); *Lowenfels v. Nathan,* 2 F.Supp. 73, 80 (S.D.N.Y.1934). Plaintiff collides with these principles over and over again as she extracts widely scattered passages from her book and pamphlet, and juxtaposes them against similarly scattered portions of Haley's *Roots,* only to demonstrate the use by both authors of obvious terms to describe expectable scenes.[8]

█ Other alleged infringements display no similarity at all in terms of expression or language, but show at most some similarity of theme or setting.[9] These items, the skeleton of a creative work rather than the flesh, are not protected by the copyright laws. *Dellar v. Samuel Goldwyn, Inc.,* 150 F.2d 612 (2d Cir. 1945), cert. denied, 327 U.S. 790, 66 S.Ct. 802, 90 L.Ed. 1016 (1946). It is only the means of expressing these elements that is protected by the copyright laws. *Reyher v. Children's Television Workshop, supra,* 533 F.2d at 91; *Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.,* 509 F.2d 64, 64–65 (2d Cir. 1974).

Finally, some of the allegations of similarity are seen upon inspecting the books to be totally and palpably devoid of any factual basis. Cf. *Arnstein v. Porter, supra,* 154 F.2d at 473.[10]

Every one of the alleged similarities between the plaintiff's two works and the defendants' book falls into at least one of the aforementioned categories of non-actionable material. Many fall into more than one. The review of the alleged similarities points unmistakably to the conclusion that no actionable similarities exist between the works.

### V.

█ The plaintiff has advanced claims of unfair competition in addition to her

---

232; *Jubilee,* pp. 172–73, *Roots,* p. 234; *Jubilee,* pp. 278–280, *Roots,* p. 644; *Jubilee,* p. 328, *Roots,* p. 649; *Jubilee,* p. 461, *Roots,* p. 361; *HIWJ,* p. 12, *Roots,* p. 664.

8. Among the many examples are: "poor white trash" (*Jubilee,* p. 60, *Roots,* p. 294), and the fluffiness of cotton (*Jubilee,* p. 36, *Roots,* pp. 205, 207, 236). See, also, *Jubilee,* pp. 25–26, *Roots,* pp. 204, 221; *Jubilee,* p. 149, *Roots,* p. 435; *Jubilee,* p. 164, *Roots,* p. 243; *Jubilee,* p. 199, *Roots,* p. 628; *Jubilee,* p. 172, *Roots,* p. 209; *HIWJ,* pp. 15–16, *Roots,* pp. 673–75; *Jubilee,* p. 22, *Roots,* pp. 677, 679; *HIWJ,* p. 24, *Roots,* p. 686.

9. Examples of such alleged similarities include descriptions of puberty (*Jubilee,* pp. 53–54, *Roots,* pp. 412–13); hypocrisy in sermons delivered to slaves (*Jubilee,* p. 123, *Roots,* p. 451);

and sexuality among the young (*Jubilee,* p. 136, *Roots,* p. 444). See, also, *Jubilee,* pp. 71, 80, *Roots,* pp. 449–453; *Jubilee,* p. 104, *Roots,* p. 594; *Jubilee,* p. 137, *Roots,* p. 265; *Jubilee,* p. 290, *Roots,* p. 219; *Jubilee,* p. 93, *Roots,* p. 210; *HIWJ,* p. 12, *Roots,* p. 668; *HIWJ,* p. 19, *Roots,* p. 682.

10. A good example is found in the allegedly similar passages at page 48 of *Jubilee* and pages 226–227 of *Roots.* Plaintiff claims that both concern secret organized religious meetings, but the scene in *Roots* does not portray an organized meeting, nor is the gathering secret or religious in nature. See, also, *Jubilee,* p. 179, *Roots,* p. 358; *Jubilee,* p. 83, *Roots,* p. 290; *Jubilee,* pp. 460, 496, 440, *Roots,* p. 327; *Jubilee,* pp. 129–130, *Roots,* p. 358.

claims of infringement. The facts alleged for the alternative theories are the same and are insufficient for the same reasons. *Gethers v. Blatty, supra,* 283 F.Supp. at 307; *Miller v. Goody,* 139 F.Supp. 176, 187 (S.D. N.Y.1956), rev'd on other grounds, 248 F.2d 260 (2d Cir. 1957); *Columbia Pictures Corp. v. National Broadcasting Co.,* 137 F.Supp. 348, 354 (S.D.Cal.1955); *Alexander v. Irving Trust Co.,* 132 F.Supp. 364, 368 (S.D.N.Y.), aff'd 228 F.2d 221 (2d Cir. 1955), cert. denied, 350 U.S. 966, 76 S.Ct. 545, 100 L.Ed. 860 (1956). *Consumers Union v. Hobart Manufacturing Co., supra,* 199 F.Supp. 860, 862, wherein summary judgment was granted on an infringement claim but denied on an unfair competition claim, is not to the contrary. In *Consumers Union* there were factual allegations regarding allegedly unfair competitive practices extrinsic to the infringement claimed. No such allegations appear in the instant actions.

The defendants' motions for summary judgment are granted. The complaints are dismissed.

It is so ordered.