IN DESIGN, alternate trade name of Hukafit Sportswear, Inc. and Jeffrey Rogers Knitwear Productions Limited, Plaintiffs,

v.

LYNCH KNITTING MILLS, INC. and Wal–Mart Stores, Inc., Defendants.

No. 87 Civ. 1139 (MGC).

United States District Court, S.D. New York.

March 7, 1988.

Gottlieb, Rackman & Reisman, P.C., New York City by George Gottlieb, for plaintiffs.

Marc Z. Newman, New York City, for defendant Lynch Knitting Mills, Inc.

Marx & Berger, New York City by Ephraim D. Berger, for defendant Wal–Mart.

## OPINION

CEDARBAUM, District Judge.

This is an action for copyright infringement. Plaintiffs, who seek only monetary relief, claim that defendants infringed their copyright in the design of a sweater. Defendants contend that the copyright is invalid, and in the alternative that their sweater does not infringe it. This action was tried before me without a jury on February 1 and 2, 1988. After having carefully examined the copyrighted sweater and the allegedly infringing one, I have concluded that the copyright is valid, but that the designs, although somewhat similar, do not meet the standard of substantial similarity that the law requires for circumstantial evidence of infringement. What follows are my findings of the relevant facts and conclusions of law.

## PARTIES

"In Design" is an alternate trade name of plaintiff Hukafit Sportswear, Inc. ("Hukafit"), a New York corporation having its principal place of business in Manhattan. Plaintiff Jeffrey Rogers Knitwear Productions Limited ("Jeffrey Rogers") is a company registered in London, England. Jeffrey Rogers created a knit design called "Aperture," and is the owner of record of the registered copyright evidenced by Copyright Certificate of Registration No. VA 172–311, effective as of November 1984, for the "Aperture" design, which is the subject of this case. The designs of Jeffrey Rogers, including the "Aperture" design, are licensed exclusively to Hukafit for manufacture in the United States. This license is of record in the Copyright Office. Defendant Lynch Knitting Mills, Inc. ("Lynch") is a New York corporation having its principal place of business in Brooklyn. Defendant Wal–Mart Stores, Inc. ("Wal–Mart") is a corporation that owns and operates a chain of retail stores.

## BACKGROUND

Plaintiff Hukafit manufactured and sold knit sweaters with the "Aperture" design at wholesale to high-fashion department stores in New York and other cities for the fall and "holiday" seasons of 1984, and for the spring and fall seasons of 1985. It began shipping the sweaters in about August 1984, and ceased shipping in about September 1985. The "Aperture" sweater was advertised by Macy's, and possibly by other stores as well. The design was a successful one. David Binder, vice-president and managing director of Hukafit, testified that the company sold over 45,000 of the sweaters. Each was labelled with two copyright notices, one at the neck and the other at a seam.

The "Aperture" sweater has an abstract, geometric design. The background consists of horizontal rows of large rhomboids, all of the same size and all oriented in the same direction. These diamond-like shapes are in two colors—red, and a black and white blend creating a mottled gray look— and those in each row are of the same

color. They do not intersect, and those of the same color do not touch each other, but are connected by small black diamonds. Superimposed onto this background are the heavy black outlines of a third set of diamond-like rhomboids, of the same size and orientation, which meet in the middles of the red and gray-blend ones. The meetings of these black outlines form diamond shapes of roughly the same size as those linking the background parallelograms. Unlike those diamonds, however, these are not solid black, but have a blended gray interior identical to that of the gray background parallelograms.

Defendant Lynch is engaged in the manufacture and sale of knitted goods, including sweaters. It does not employ any designers, and does not design its own sweaters. It bases its designs on samples or photographs brought in by salesmen and customers. In 1986, Lynch manufactured knit sweaters of a pattern somewhat similar to the "Aperture" design under its style numbers 705, 706 and 726, the different style numbers referring to differences in the neckline, sleeve length and cut. It sold these sweaters to defendant Wal–Mart, as well as to Montgomery Ward & Company, Inc., Mode O'Day Company, and Ann & Hope, Inc., none of which had earlier sold the Hukafit sweater. Lynch does not have the sweater, sample or photograph that was the source of the design of these sweaters. Sandor Schwartz, president of Lynch, testified that he does not know the source of his company's design.

The design of the Lynch sweater produced at trial is also one of rows of solid rhomboids in two colors in the background, those in the same rows sharing the same color, with the outlines of a third set of rhomboids superimposed over them and intersecting them. The rhomboids in the Lynch sweater, which are turquoise and black, are considerably smaller than those in Hukafit's, as well as much more oblong and less square. They do not resemble diamonds. The black rhomboids are tilted onto a different corner from the turquoise ones, so that the different colored rhomboids are turned in different directions. The rhomboids, like those in the Hukafit sweater, do not touch those of the same color. Half of the spaces between them are occupied by red diamonds similar to, but smaller than, the black diamonds in the Hukafit sweater. The other half, which occupy the vertical spaces between black rhomboids and the horizontal spaces between the turquoise ones, are occupied by a heavy black line which serves to connect the black rhomboids vertically, a connection broken only by a small red line having no parallel in the Hukafit sweater. Perhaps because of the vertical continuity between the black rhomboids, the impression is that the background forms are arrayed in vertical rows, whereas the rows in the Hukafit sweater appear to be horizontal.

Overlaying the background rhomboids in the Lynch sweater are the red outlines of a third set of rhomboids, of the same shape and the same two orientations as those in the background. One border of each of the outlined rhomboids oriented in one direction is approximately twice as thick as all the other borders. Small black diamonds appear in half of the places where the red rhomboid outlines meet. The other half are simply left as solid red areas, formed where the wide edge of one red rhomboid outline runs adjacent to the usual-sized edge of another.

## DISCUSSION

### A. Validity of the Copyright

Lynch and Wal–Mart contend first that Hukafit's copyright on the Aperture design is invalid. The certificate of copyright registration is prima facie evidence of the copyright's validity, shifting to the defendants the burden of proving it invalid. *See Carol Barnhart Inc. v. Economy Cover Corp.*, 773 F.2d 411, 414 (2d Cir.1985). The test for copyright validity is whether a work is the result of "independent creation," which, "in turn, means that a work must not consist of actual copying. This test of originality, which has been aptly characterized as 'modest,' 'minimal,' and as establishing a 'low threshold,' is the *sine qua non* of copyrightability." *Dur-*

ham Industries, Inc. v. Tomy Corp., 630 F.2d 905, 910 (2d Cir.1980) (citations omitted); see also Dolori Fabrics, Inc. v. Limited, Inc., 662 F.Supp. 1347, 1352–53 (S.D. N.Y.1987). The meager evidence introduced by defendants to show that the "Aperture" design was not the product of some independent creation consisted only of the contention of their expert witness that it is a mere variation of a standard argyle pattern. The only actual examples of argyle patterns placed in evidence in this case were introduced by Hukafit, and the "Aperture" pattern is clearly not a copy of any of them. Therefore, defendants have failed to show that the copyright is invalid.

## B. Infringement

■ Where there is no direct evidence of copying, as there is not in this case, a plaintiff may prove copying circumstantially by showing an alleged infringer's access to the copyrighted work and "substantial similarity" between the two works. Novelty Textile Mills, Inc. v. Joan Fabrics Corp., 558 F.2d 1090, 1092 (2d Cir.1977); Dolori Fabrics, 662 F.Supp. at 1353. Based on the advertising and successful sales of Hukafit's "Aperture" sweater, I find that Lynch did have access to the design. The only serious question raised by this case—and it is a close one—is that of substantial similarity.

■ In determining whether one pattern is substantially similar to another, the court must put itself in the position of an ordinary observer. The Second Circuit test, taken from an observation by Judge Learned Hand, is whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." Horgan v. Macmillan, Inc., 789 F.2d 157, 162 (2d Cir.1986); Joan Fabrics, 558 F.2d at 1093, both quoting Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir.1960). The Second Circuit test has also been expressed as turning on "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Malden Mills, Inc. v. Regency Mills, Inc., 626 F.2d 1112, 1113 (2d Cir.1980), quoting Ideal Toy Corp. v. Fab-Lu Ltd., 360 F.2d 1021, 1022 (2d Cir.1966). In deciding the question, "one should consider the uses for which the design is intended, especially the scrutiny that observers will give to it as used." Peter Pan, 274 F.2d at 489.

■ Examining the sweaters at a distance of five to ten feet, and looking at them not with a view to analyzing their design components but simply to comparing the aesthetic impressions that they give, I am unable to conclude that the ordinary observer would overlook the differences if they were not pointed out to her, or would recognize the design of the Lynch sweater as having been appropriated from the Hukafit one. The two sweaters, it is true, share their basic design elements —background rhomboids in two colors, with the outlines of an additional set of rhomboids superimposed over and intersecting them, and with small diamonds joining some of the rhomboids. Nevertheless, those design elements are of different sizes, shapes and orientation in the two sweaters, and the overall appearance of each sweater is quite different. The elements are considerably larger in the Hukafit sweater, and the pattern is much more regular. The impression that it conveys, although the design is not simple, is a calm, placid one, on which the viewer's eye rests comfortably. Even aside from the fact that its colors are brighter and more garish, this is not the impression conveyed by the Lynch sweater. The design elements are significantly smaller, and are therefore repeated more often on the face of the sweater. Together with the far less regular and more varied character of the pattern—the differing thicknesses of the lines, the differing orientations of the parallelograms, and the differing design elements connecting them—this creates a frenetic, busy quality. For this reason, and because the black rhomboids appear to be connected vertically, one's eye is led around and around the design. The feeling conveyed is one of design elements in movement, rather than in equilibrium.

Thus, although the similarity of the basic design elements of the two sweaters would be apparent to the ordinary observer, the "total effect ... is quite distinct," *Durham Industries*, 630 F.2d at 917, quoting *Ideal Toy*, 360 F.2d at 1022, and I therefore conclude that Lynch and Wal–Mart are not liable for infringement. In reaching this conclusion, I have tried not to be influenced by the differences in color between the two sweaters. Even though the role of color in copyright infringement cases appears to be an open question, *see Joan Fabrics*, 558 F.2d at 1094 n. 6 and *id.* at 1095–96 (Mansfield, J., concurring and dissenting), the "Aperture" design is relatively intricate, and thus a change in color ought not to be sufficient in this case to avoid liability for infringement, *id.* at 1096 (Mansfield, J., concurring and dissenting).

I have paid particular heed to decisions of the Second Circuit which have found at least a *prima facie* case of infringement of abstract or geometric designs in cases in which district judges had originally taken a different view. *See Joan Fabrics, supra; Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc.*, 490 F.2d 1092 (2d Cir.1974); *Concord Fabrics, Inc. v. Marcus Brothers Textile Corp.*, 409 F.2d 1315 (2d Cir.1969) (per curiam). Nevertheless, to the extent that it is possible to visualize the designs in those cases from their descriptions in the decisions, they appear to have been considerably more similar to each other than are the two sweater designs in this case. In *Joan Fabrics*, the Court noted that when one fabric was placed over a portion of the other, "the design, dimensions and colors match-up [sic] and the appearance is of one fabric." 558 F.2d at 1093 n. 5. In *Soptra Fabrics*, the Court found that

> in a design containing a strip of crescents, scalloping or ribbons between that strip and then rows of semicircles, the only obvious dissimilarity from a few feet away is that the semicircles in two rows of four are reversed in Stafford's fabric, while they are not in the three rows of Soptra's.

490 F.2d at 1093. And in *Concord Fabrics*, not only were the design elements the same shapes, but they were the same di-

mension, and the designs within and around them gave "the same general impression." 409 F.2d at 1316.

## CONCLUSION

The Clerk shall enter judgment for the defendants. Because the question of infringement is a close one, attorneys' fees will not be awarded. *See Roth v. Pritikin*, 787 F.2d 54, 57 (2d Cir.1986).

The foregoing shall constitute my findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

SO ORDERED.