Rebecca **REYHER** and Ruth **Gannett,** Plaintiffs-Appellants,

v.

**CHILDREN'S TELEVISION WORKSHOP** and Tuesday Publications, Inc., Defendants-Appellees.

**No. 143, Docket 75–7278.**

United States Court of Appeals, Second Circuit.

Argued Oct. 31, 1975.

Decided April 5, 1976.

Eleanor Jackson Piel, New York City, for plaintiffs-appellants.

Eugene L. Girden, New York City (Carleton G. Eldridge, Jr., Paul B. Jones, Coudert Brothers, New York City, of counsel), for defendants-appellees.

Paul P. Selvin, Butler, Jablow & Geller, New York City, for amicus curiae, Writers Guild of America.

Before MULLIGAN, OAKES and MES-KILL, Circuit Judges.

MESKILL, Circuit Judge:

Plaintiffs below, Rebecca Reyher and Ruth Gannett, appeal from an order of the District Court for the Southern District of New York, John M. Cannella, *Judge,* dismissing their copyright infringement complaint after a two day trial without a jury. We affirm the district court's disposition of this case on the ground that there was no substantial similarity between the two works as to copyrightable matter.

Appellants Reyher and Gannett are the author and illustrator respectively of a children's book entitled *My Mother Is The Most Beautiful Woman In The World* which was published with notice of copyright on August 24, 1945. Appellee Children's Television Workshop ("CTW") is the producer of the educational children's television program known as "Sesame Street" and the

publisher of *Sesame Street Magazine.* Appellee Tuesday Publications, Inc. ("TPI") is the publisher of a monthly periodical known as *Tuesday At Home,* which is distributed by several newspapers across the country.

The complaint alleges that CTW and TPI infringed and are continuing to infringe plaintiffs' copyright by publishing an illustrated story entitled "The Most Beautiful Woman In The World," which plaintiffs claim was copied from their book without their knowledge or consent. The plaintiffs further assert that CTW infringed their copyright by producing, performing, taping, and televising, without knowledge or authorization, a television skit entitled "The Most Beautiful Woman In The World."

The defendants deny any infringement of plaintiffs' copyright. They contend that a thematic idea is not protected by copyright and further, that as a "retold" folk tale, the story line involved here is in the public domain. A two day trial was held before Judge Cannella. The three key witnesses were appellant Reyher, Jon Stone, author of the allegedly infringing script and executive producer and head writer for "Sesame Street," and Tibor Gergely, the artist who illustrated the script for *Sesame Street Magazine.*

Reyher testified that her book *My Mother Is The Most Beautiful Woman In The World* had its genesis in a story told to her as a child in Russian by her Russian mother. While she could not repeat this story verbatim, she stated that she had "taken a storyline . . . [and] adapted it . . . . [It was her] treatment . . . even though it was [her] mother's story." Later in her testimony, Reyher said she had only "assumed" that the story was a Russian folktale known to others.

Stone testified that he remembered the theme used in his script from a story told to his younger sister more than 20 years ago. Denying that he had ever seen appellants' work in any form, Stone stated that he used no source for his script other than his memory. Tibor Gergely, the artist who had sketched the allegedly infringing illustration of the reunion scene between mother and child, testified that he had referred to no outside materials when illustrating the story, although he remembered the story from a book read during his childhood in Europe; further, he stated that since he had never seen appellant Gannett's illustrations, any similarity in the drawings of the reunion scene was coincidental.

Judge Cannella dismissed the infringement claim. He noted that there was substantial similarity between the two works because "[w]hile defendants' rendition of the story takes place in a different locale and is told with fewer frills . . . both stories present an identical sequence of events." He concluded, however, that since Reyher testified that the story line in her book was "substantially taken from, if not identical with, the story told to her by her mother" and since she failed to show that she had added anything to the story or changed it in any significant way, Reyher's book was a derivative work, i. e., one "substantially copied from a prior work in the public domain." Reyher's copyright thus protected only *her* original product, which did not include the plot. The court found no textual copying.[1] In comparing the two illustrations, the district court concluded that the differences between them were so substantial as to preclude a finding of infringement. 387 F.Supp. 869 (S.D.N.Y. 1975).

■ Initially we feel that we must note our grave doubts about the district court's characterization of Reyher's book as a derivative work. In addition to the classes of works eligible for copyright protection under 17 U.S.C. § 5, Section 7 of Title 17 permits copyrighting "adaptations, . . . translations, or other versions of works in the public domain," so long as the contributions made by the author to the previously

---

1. The district court found little, if any, paraphrasing and also noted that the only phrase which appeared in both works was "Once upon a time, long, long ago."

existing work are not merely trivial. The protection afforded by § 7, however, is limited solely to the author's additions to the prior underlying work. Generally, "[a] work is not derivative unless it has substantially copied from a prior work. If that which is borrowed consists merely of ideas and not of the expression of ideas, then although the work may have in part been derived from prior works, it is not a derivative work." 1 M. Nimmer on Copyright § 39 at 166–167 (1975) (hereinafter "Nimmer"). This statement presents, we think, the proper perspective from which to evaluate Reyher's book.

Reyher admittedly borrowed the "idea" embodied in the story from her mother. The basic plot of this children's book is very simple. *See* discussion *infra*. Reyher's presentation of the story line was entirely her own. Aside from its theme, she could neither recall the exact story her mother told nor the precise language used. More importantly, no tangible or intangible prior work was proved with sufficient detail to enable a court to judge either whether substantial copying of anything other than the idea of the prior work had occurred or which part of her adaptation constituted her own new, and thus protected, material. In light of the absence of such evidence, to characterize Reyher's work as derivative merely because she used memories of her mother's story would create problems in protecting any literary endeavor as well as exacerbate the difficulty in determining the protection to be afforded a particular effort.

Although we disagree with the district court's "derivative work" rationale, we nevertheless affirm its dismissal of this case on the ground that any similarities between the two works related only to non-copyrightable matter. In reaching this conclusion, we must overturn the trial court's factual finding that there were substantial similarities between the two works. While we recognize that our appellate function usually does not include factfinding, where, as here, the determination of similarity rests solely on a comparison of the works in issue rather than on credibility of witnesses or other evidence only for the factfinder, "we are in as good a position as the trial judge" to determine the issue. *Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc.,* 490 F.2d 1092, 1093 (2 Cir. 1974); *Concord Fabrics, Inc. v. Marcus Brothers Textile Corp.,* 409 F.2d 1315, 1317 (2 Cir. 1969) (*per curiam*); *Millworth Converting Corporation v. Slifka,* 276 F.2d 443, 445–446 (2 Cir. 1960); *cf. Orvis v. Higgins,* 180 F.2d 537, 539 (2 Cir.), *cert. denied,* 340 U.S. 810, 71 S.Ct. 37, 95 L.Ed. 595 (1950). *See* 1 Nimmer § 140 at 607.

■ In an infringement action, a plaintiff must establish ownership of the copyright and copying by the defendant. *McGraw-Hill, Inc. v. Worth Publishers, Inc.,* 335 F.Supp. 415, 419 (S.D.N.Y.1971); 1 Nimmer § 141 at 611. As was done in the instant case, ownership is commonly proved by production of the copyright registration certificate. Because of the inherent difficulty in obtaining direct evidence of copying, it is usually proved by circumstantial evidence of access to the copyrighted work and substantial similarities as to protectible material in the two works. *Arnstein v. Porter,* 154 F.2d 464 (2 Cir. 1946); *Bevan v. Columbia Broadcasting System, Inc.,* 329 F.Supp. 601 (S.D.N.Y.1971). "[I]f there are no similarities, no amount of evidence of access will suffice to prove copying." *Arnstein v. Porter, supra,* 154 F.2d at 468.

■ It is an axiom of copyright law that the protection granted to a copyrightable work extends only to the particular expression of an idea and never to the idea itself. *Mazer v. Stein,* 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630, 642 (1954); *Baker v. Selden,* 101 U.S. 99, 102–103, 25 L.Ed. 841, 843 (1879). This principle attempts to reconcile two competing societal interests: rewarding an individual's ingenuity and effort while at the same time permitting the nation to benefit from further improvements or progress resulting from others' use of the same subject matter. "In the case of verbal 'works' it is well settled that although the 'proprietor's' monopoly ex-

tends beyond an exact reproduction of the words, there can be no copyright in the 'ideas' disclosed but only in their 'expression.' Obviously, no principle can be stated as to when an imitator has gone beyond copying the 'idea,' and has borrowed its 'expression.' Decisions must therefore inevitably be ad hoc." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2 Cir. 1960) (L. Hand).

The difficult task in an infringement action is to distill the nonprotected idea from protected expression. In *Nichols v. Universal Pictures Corporation*, 45 F.2d 119, 121 (2 Cir. 1930), *cert. denied*, 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1931), Judge Learned Hand articulated his "abstractions test" by noting that "[u]pon any work . . . a great number of patterns of increasing generality will fit equally well, as more and more of the incident is left out. . . . [T]here is a point in this series of abstractions where they are no longer protected, since otherwise the playwright could prevent the use of his 'ideas' to which, apart from their expression, his property is never extended." Attempting to further delineate this boundary, one commentator has stated that "protection covers the 'pattern' of the work . . . the sequence of events and the development of the interplay of characters."[2]

While the demarcation between idea and expression may not be susceptible to overly helpful generalization, it has been emphasized repeatedly that the essence of infringement lies in taking not a general theme but its particular expression through similarities of treatment, details, scenes, events and characterization. *Sheldon v. Metro-Goldwyn Pictures Corporation*, 81 F.2d 49, 54 (2 Cir.), *cert. denied*, 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936); *Burnett v. Lambino*, 204 F.Supp. 327 (S.D. N.Y.1962); *Bevan v. Columbia Broadcasting System, Inc., supra*, 329 F.Supp. at 605. Another helpful analytic concept is that of *scenes a faire*, sequences of events which necessarily follow from a common theme. "[S]imilarity of expression . . . which

necessarily results from the fact that the common idea is only capable of expression in more or less stereotyped form will preclude a finding of actionable similarity." 1 Nimmer § 143.11 at 626.2; *see* Yankwich, *Originality in the Law of Intellectual Property*, 11 F.R.D. 457, 462 (1951). Copyrights, then, do not protect thematic concepts or scenes which necessarily must follow from certain similar plot situations. Thus, "no one infringes, unless he descends so far into what is concrete [in a work] as to invade . . . [its] 'expression.'" *National Comics Publications v. Fawcett Publications*, 191 F.2d 594, 600 (2 Cir. 1951). An example illuminating these somewhat theoretical statements may be helpful at this point. In *Nichols v. Universal Pictures Corporation, supra,* the author of the play "Abie's Irish Rose" claimed that her work had been infringed by defendant's film "The Cohens and The Kellys." The court found that the only matter common to the two stories, a "quarrel between a Jewish and an Irish father, the marriage of their children, the birth of grandchildren and a reconciliation," was not protected by copyright; similarly, the four characters common to both plays were prototypes too indistinct to merit copyright protection. The court concluded that "[a] comedy based upon conflicts between Irish and Jews, into which the marriage of their children enters," was not within the protection afforded by copyright because this theme was part of plaintiff's ideas.

The question which remains is whether defendants in the instant case utilized the idea in Reyher's book or instead descended so far into the concrete as to invade her expression. We must first note that both stories, intended for children, are necessarily less complex than some other works submitted to pattern analysis. *See, e. g., Bevan v. Columbia Broadcasting System, Inc., supra; Nichols v. Universal Pictures Corporation, supra.* Therefore, in addition to the essential sequence of events, we might properly consider the "total concept and feel" of the works in question.

---

**2.** Z. Chafee, *Reflections on the Law of Copyright,* 45 Col.L.Rev. 503, 513 (1945).

*Roth Greeting Cards v. United Card Company,* 429 F.2d 1106, 1110 (9 Cir. 1970).

█ Reyher's thirty-five page book focuses on a Russian family living in the Ukraine; the setting of the story is an important component of the work. The main protagonists are the mother, father and six year old daughter. The first few pages describe the duties of each family member in harvesting the wheat crop. There is also narrative about the customary feast days during harvesting as Reyher describes, through the literary device of the little girl helping her mother, the preparation of distinctive Russian foods. The feast day itself is depicted with vivid details of costume and entertainment. We have now progressed through fifteen pages of appellant's book. On the last day of field work prior to the feast, the little girl is separated from her parents. Meeting a group of villagers unfamiliar to her, she describes her mother as the most beautiful woman in the world. The village leader sends boys to bring back all the likely candidates; none, of course, is the mother. Finally, a homely woman, in fact the girl's mother, approaches the crowd and is joyfully reunited with her child. The village leader presents the moral of the story: "We do not love people because they are beautiful, but they seem beautiful to us because we love them." At the feast day, the little girl tells her mother that, although other children have teased her about her feelings, she thinks her mother is the most beautiful woman in the world. The mother expresses her happiness that her child sees with her heart as well as with her eyes.

The *Sesame Street Magazine* version of the story, two pages long, presumably is set in Africa. There is no textual detail about African life; any information comes from the five illustrations, which show African dress on the characters, a woman carrying a basket on her head, and thatched huts. The story opens with a little boy crying in the fields because he has become separated from his mother. He describes her as the most beautiful woman in the world. The village leader gathers all the beautiful women from surrounding villages to no avail. An old unattractive woman, the missing mother, is reunited with her son. The village leader states that although he doesn't find her beautiful, the important thing is what the little boy thinks. The lesson to be learned is "[w]hat's not so beautiful to some can be very, very beautiful to others."

Based on the special relationship between parent and child, both works present the thematic concept that to a lost child, the familiar face of the mother is the most beautiful face, even though the mother is not, in fact, beautiful to most.[3] The overlapping sequences of events concern the lost child finding his or her mother, albeit with some difficulty because of the description given. This similarity of events, however, may be considered *scenes a faire,* scenes which necessarily result from identical situations.[4] Thus, where a lost child is the protagonist, there is likely to be a reunion with parents. Furthermore, the morals stated by the two stories differ in emphasis. Reyher's book focuses on how love makes people appear beautiful, while the CTW story stresses that what is beautiful to some may not be beautiful to others. More importantly, however, the two works differ in "total feel." Reyher's book presents a picture of family life in the Russian Ukraine and develops the characters of the little girl and her mother. The CTW story is barren of meaningful setting or character development in its attempt to present its theme. The two stories are not similar in mood, details or characterization. Since both present only the same idea, no infringement

---

**3.** Appellants do not, and could not, claim that the title of their book is within copyright protection. *Arnstein v. Porter, supra,* 154 F.2d at 474.

**4.** As well stated by Judge Yankwich in his article, *Originality in the Law of Intellectual Property, supra,* 11 F.R.D. at 464–465, "[S]imi-larity of theme so obviously calls for similarity of treatment that originality will be made to reside in the association and grouping of materials, the delineation of character, the conflict and the other elements which are the very essence of a dramatic production, . . . representing human beings in action or in conflict."

as to protected expression occurred. The district court's finding that the two illustrations of the reunion scene have such substantial differences as not to warrant a finding of infringement is one we will not disturb.

Affirmed.