Kevork CHOLAKIAN, Plaintiff,

v.

MTV NETWORK, INC., Defendant.

No. 89 Civ. 6232 (JMW).

United States District Court,
S.D. New York.

Nov. 1, 1989.

---

Anderson Costigan, New York City, for plaintiff; A. Broadus Anderson III, of counsel.

Santora & McKay, New York City, for defendant; Joseph J. Santora, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

Plaintiff Kevork Cholakian ("Cholakian") brings, by Order to Show Cause, this motion for a preliminary injunction against MTV Network, Inc. ("MTVN").[1] On October 3, with notice to MTVN, the Order to Show Cause was issued by the Honorable Robert W. Sweet, sitting in Part I.

Cholakian commenced this action for copyright infringement, pursuant to 17 U.S.C. § 501 *et seq.* (1982), claiming that MTVN infringed certain characters and design elements of his independent production of an animated series entitled "A Dragon's Tale." Although Cholakian has not yet sold his story and characters to television, he claims that MTVN had possession of various materials or "treatments" of "A Dragon's Tale" for several months during which MTVN was considering that series for their "Nickelodeon" cable television programming schedule. Specifically, Cholakian asserts that, during that time, MTVN usurped a dragon and fish characters and elements of environmental design from "A Dragon's Tale" for use in "Eureeka's Castle," a multimedia preschool variety program currently aired on "Nickelodeon."

A full hearing was held on October 10–11, 1989. Based upon the following findings of fact and conclusions of law, Cholakian's application for a preliminary injunction is denied.

## FACTS

Cholakian, currently employed as a producer/art director for the American Broadcasting Company ("ABC"), Tr. 4, some years ago undertook an independent venture to develop and produce an an-

---

1. This matter arises out of a case assigned to the Honorable John M. Walker. It proceeded before me in Part I because Judge Walker was out of the district at the time.

imated series of children's television shows. He intended to present television and cable networks with a project using an animated dragon family place in the mythical land of "Dragonia." Tr. 6. The project aspired to be an entertaining vehicle for teaching preschoolers moral lessons by engaging "unique adaptations of stories by such popular authors as Hans Christian Andersen and the Brothers Grimm." Exh. A, annexed to Complaint. Cholakian enlisted the aid of outside artists on a "work-for-hire" basis to develop storylines and help with character design.

The characters featured in Cholakian's stories are described by him to be "playful, with human, childlike personalities," Cholakian Affidavit, ¶¶ 10, 13, akin to the characters in "Eureeka's Castle." After Cholakian formally executed some of the storylines and characters, he commenced copyrighting the art work, storyboards and character treatments on an ongoing basis. See Plaintiff's First Amended Memorandum, at 1–2. Certain dragon and fish characters were copyrighted by February 1988. Cholakian simultaneously launched a marketing campaign for these storylines under the name of "A Dragon's Tale." He developed a promotional package comprised of a brochure, storyboard frames, a map of Dragonia, "A Dragon's Tale" storyline, and photographs of the dragon dolls that were to be sold as a "spin-off" of the program. Tr. 19.

In March of 1988, Cholakian delivered promotional packages to MTVN programming, ABC, the National Broadcasting Company ("NBC") and the Columbia Broadcasting System ("CBS"). ABC expressed interest in the material, however its fall programming schedule was complete. Tr. 18–20. Around the same time period, MTVN, which was developing "Eureeka's Castle," also turned down "A Dragon's Tale," reasoning that it was too costly to produce animation.

In early 1989, while Cholakian was away on vacation, he noticed an advertisement for the then upcoming "Nickelodeon" series, "Eureeka's Castle." Plaintiff's First Amended Memorandum, at 4–5. Sometime thereafter, Cholakian viewed one of the episodes of "Eureeka's Castle," and immediately had his counsel send a cease and desist letter to MTVN. Tr. 41. Cholakian thereafter commenced this lawsuit, claiming that his copyrighted dragon, fish characters, and certain environmental design themes were unlawfully usurped and used by MTVN in "Eureeka's Castle." In particular, Cholakian points to "Eureeka's" dragon Magellan and "the fishtones" fish puppets.

## DISCUSSION

It is a generally understood that the dragons of myth and legend are large dinosaur-like, fire-breathing creatures. While the treatments of dragons range from ferocious to funny and titan to tiny, it is fair to say that certain unique features are universally viewed to be "dragon-like," presumably deriving from literary description or folklore.

■ Although certain characterizations, derived from myth, are widely recognized by the general public, that is not to say that an individual creator's characterization may not be unique enough for copyright protection. Indeed, Cholakian copyrighted "A Dragon's Tale" and all of its primary dragon characters. Copyrights for derivative works, however, may not extend beyond unique and individual contributions which enhance the underlying, albeit widely recognized, theme. See Conan Properties, Inc. v. Mattel, Inc., 601 F.Supp. 1179, 1182 (S.D.N.Y.1984). Accordingly, even if certain features of "A Dragon's Tale," are not particularly unique, that does not preclude enjoining expressions which infringe on Cholakian's distinctive variations.

■ Because Cholakian seeks to protect his copyrights in all aspects of "A Dragon's Tale", he has the burden of producing some evidence of infringement sufficient to satisfy standard for preliminary injunction. The standard for granting injunctive relief in the Second Circuit mandates a showing of irreparable harm and either: (1) a likelihood of success on the merits; or (2) "sufficiently serious questions going to the merits to make them a fair ground for litiga-

tion and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir.1979). Irreparable harm is presumed from a showing of copyright infringement. *Atari, Inc. v. North American, Etc.*, 672 F.2d 607, 620 (7th Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982) (citing, *Wainright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 94 (2d Cir. 1977)), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978). Moreover, "if probable success [on the merits]—a prima facie case of copyright infringement—can be shown, the allegations of irreparable injury need not be very detailed." *Wainright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 94 (2d Cir.1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978).

Cholakian can prove infringement by demonstrating both MTVN's access to the copyrighted work and a substantial similarity between the characters of "A Dragon's Tale" and "Eureeka's Castle." *See Business Trends Analysts, Inc. v. The Freedonia Group, Inc.*, 887 F.2d 399, 402 (2d Cir.1989) (citing *Reyher v. Children's Television Workshop*, 533 F.2d 87, 90 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976)). It is undisputed that Cholakian sent his promotional materials for "A Dragon's Tale" to MTVN in March of 1988 and that, at about the same time, MTVN was preparing a program called "Eureeka's Castle."

Cholakian, however, failed to submit sufficient proof to support his theory that the artistic crew hired by MTVN were privy to promotional materials for "A Dragon's Tale." The materials were retained solely by the programming department. Significantly, the main puppet designer/builder, Matthew Stoddart, not only categorically denied seeing the materials, but, he also testified that had very little interaction with the particular MTVN personnel who had received Cholakian's promotional package. *See* Tr. 114–25 Thus, although Cholakian established that MTVN had his copyrighted materials in its possession, there was no affirmative evidence that the pup-

pet designers for "Eureeka's Castle" had access to the same. Nonetheless, from the evidence presented, I cannot determine with absolute certainty that there was no access here. Therefore, the issue, whether or not there exists a substantial similarity between "A Dragon's Tale" and "Eureeka's Castle," must be considered.

■ As enunciated by Learned Hand, the substantial similarity test provides that in order to establish a copyright infringement, a plaintiff must establish that "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960) (citing *Conan Properties, Inc. v. Mattel, Inc.*, 712 F.Supp. 353, 361 (S.D.N.Y.1989)). "Determination of similarity rests solely on a comparison of the works in issue rather than on credibility of witnesses or other evidence...." *Business Trends Analysts, Inc. v. The Freedonia Group, Inc.*, 887 F.2d 399, 403 (2d Cir. 1989). The animated dragons depicted in Cholakian's story boards, art work and photographs have green bodies, blue-spiked spines, yellow-ribbed chests and bellies, wing-tipped ears, and wings attached to the back of their shoulders. Exh. B, annexed to First Amended Affidavit of Kevork Cholakian in Support of Preliminary Injunction. A unicorn-like horn sprouts from atop each dragon's head, their nostrils protrude in a crocodile-like manner from the end of the snout, and two teeth jut out from the snout when the dragon's mouth is closed. The dragons wear short-sleeved shirts and their plump yellow underbellies hang out, giving them an infantile and goofy appearance. Memorandum of Law In Support of Plaintiff's Motion for Preliminary Injunction, at 2–3.

Although MTVN's Magellan is a fat, green dragon with a yellow, ribbed underbelly, he differs significantly from Cholakian's dragon. Magellan is dappled with pink polka dots, has no ears and no unicorn horn, unlike those dragons in Cholakian's "A Dragon's Tale." Moreover, Magellan's eyes bulge out and touch each other, and

he sports a single square tooth hanging from his huge snout. Magellan is a massive body-puppet, similar to Sesame Street's "Big Bird," and his creators testified that they never intended Magellan to be animated. Cholakian, in an attempt to prove his case, took a freeze-frame of MTVN's Magellan (from an episode of "Eureeka's Castle") and placed it in juxtaposition with a posed photo of Cholakian's plush stuffed dragon doll purposefully dressed in a fashion similar to that of Magellan. Even so, the dissimilarities between the two dragons stand out.

Cholakian also objects to "the fishtone" puppets depicted in "Eureeka's Castle," asserting that they are substantially similar to the animated fish characters of "A Dragon's Tale." First Amended Memorandum of Law In Support of Plaintiff's Motion for Preliminary Injunction, at 3. Cholakian claims that his portrayal of fish parallels the three pompadour-haired puppet fish who sing 1950's tunes on "Eureeka's Castle." *See* Exh. C, Plaintiff's Reply Memorandum in Support of Preliminary Inj., at 3. Moreover, Cholakian points out other coinciding elements between "A Dragon's Tale" and "Eureeka's Castle," namely, that the mythical kingdom of "Eureeka's Castle" is akin to the castle of "A Dragon's Tale," and that MTVN's dragon, Magellan, sleeps in a real bed, stalactites hang from the ceiling of Magellan's room and a moon appears outside his window at night, supposedly just like scenes as depicted by Cholakian in "A Dragon's Tale." Tr. 39; Plaintiff's Reply Memorandum in Support of Preliminary Inj., at 2–3.

In applying the substantial similarity test, the court need not examine the treatments detail by detail. It is preferable to look to the overall appearance of the two items "to see if the combination of these details creates a general impression of substantial similarity." *Dollcraft Industries, Ltd. v. Well–Made Toy Mfg.*, 479 F.Supp. 1105, 1116–17 (E.D.N.Y.1978) (citation omitted). I find that the particular treatments of the dragons, and other controverted characters and scenes, differ such that a reasonable person would not be apt to confuse one creative effort with the other.

And although both are intended for preschoolers, "Eureeka's Castle" is closer to a "Sesame Street" variety type-program which presents singing, dancing, claymation and some limited animation, whereas "A Dragon's Tale" is not a multimedia presentation, but depicts more serious themes primarily through the lives of an homogenous family of dragons.

Clearly there is some similarity between the friendly dragon of "A Dragon's Tale" and MTVN's Magellan of "Eureeka's Castle." They are both dragons and, to my untrained eye, the representations of each perhaps has a common source in the humorous old dragon character Ollie, from "Kookla, Fran and Ollie." After considering all of the materials, however, I have concluded that, there are enough dissimilarities between "A Dragon's Tale" and "Eureeka's Castle" to find that these two productions derive from independent efforts.

Because Cholakian has not made out a case of *prima facie* copyright infringement, this application for a preliminary injunction must be denied.

SO ORDERED.