**Walter JONES, Plaintiff,**

v.

**CBS, INC., Viacom International, Inc., Samm–Art Williams, Tim Reid and Hugh Wilson, Defendants.**

**No. 88 Civ. 8762 (MGC).**

United States District Court, S.D. New York.

March 30, 1990.

Bender & Frankel by Sandor Frankel, James Daw, New York City, for plaintiff.

Pryor, Cashman, Sherman & Flynn by Stephen F. Huff, Tom J. Ferber, Tina C. Kremenezky, New York City, for defendants.

## OPINION

CEDARBAUM, District Judge.

Plaintiff Walter Jones sues defendants CBS, Inc., Viacom International, Inc., Samm–Art Williams, Tim Reid and Hugh Wilson for alleged copyright infringement and false designation of origin under 17 U.S.C. § 501 *et seq.* and 15 U.S.C. § 1125(a) (the "Copyright Act" and the "Lanham Act" respectively). The copyright claim is based on Jones' allegation that an award-winning television series called "Frank's Place" was copied from the sketchy pilot script that he wrote for a proposed series of radio plays entitled "Peachtree Street." The Lanham Act claim is based on defendants' alleged failure to give Jones credit as the source of "Frank's Place." Defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56 on the ground that there is no actionable similarity between "Peachtree Street" and "Frank's Place" as a matter of law. Since comparison of the two works establishes that no reasonable jury could find them substantially similar, defendants' motion is granted.

### Background

#### A. *The Parties*

On December 20, 1985, Jones registered the pilot script for "Peachtree Street" with the United States Copyright Office. For purposes of this motion, defendants concede that at least some of them received copies of this script and thus had access to plaintiff's work. Jones has not at any time granted a copyright license to any of the defendants.

Beginning in September 1987, defendant CBS broadcast "Frank's Place" as a weekly television series. Each of the other defendants was listed in the credits as follows. Defendant Viacom was the owner of the copyright in the television broadcasts. Defendant Wilson was the producer of the series. Defendant Williams was credited as being a story editor. Defendant Reid was the actor in "Frank's Place" who portrayed the central character, Frank Parrish. Defendants Wilson and Reid also received credit as co-executive producers of

the program. In the complaint, plaintiff treats all of the defendants as collectively liable under both the Copyright Act and the Lanham Act. In their motion for summary judgment, defendants have not addressed the possible differences in their legal responsibility.

### B. *The Disputed Works*

#### 1. "Peachtree Street"

The pilot script for "Peachtree Street" contains a non-dramatic introduction which generally describes the setting, the principal and transient characters, and three storylines. The story is set in a small, predominantly black southern town, and focuses primarily on the blue collar workers who live and work along the main street, Peachtree Street. In the words of the introduction: "Most of the characters will derive from the so called Negro folk humor (idiom). Hard working, industrius [sic], simple people." The principal characters include Mary and Leon Lucas who own the local butcher shop, a "conjure lady" named Sister Sadie, an elderly local mortician named Bob Rodgers, and a local white professional named Dr. Leadbelly who is the physician to the community.

The pilot script contains four scenes. The first is a morning scene which takes place outside the Lucas' butcher shop. Maxine Jackson is passing the shop as Mary Lucas, and later her brother Leon, are opening for the day. Mary and Leon inherited the business from their deceased parents. Maxine and Leon speak with Mary about her new romantic interest, Gregg Harris, a drifter from out of town. Leon plays the role of protective concerned brother. Buster, a down-and-out blues singer, stops by to collect his pay for cleaning the bar and pool hall that the Lucases also own.

In the next scene, a male and female character are riding in a large vehicle. Jeff and his 30-year-old pregnant stepmother, Elsie, with whom Jeff is having an affair, are transporting a patient to the hospital in the family's hearse, which doubles as an ambulance. Elsie denies that Jeff is the father of the baby she's carrying, and insists that the father is Jeff's 63-year-old father, who is her husband. When Jeff and Elsie arrive at the hospital there is no longer a patient in the back of the hearse. "There ain't no patient back there," the hospital orderly tells them. Jeff speeds off in search of the patient.

The third scene opens on a tall, voluptuous, attractive woman named Lucille Williams, whose previous two husbands were murdered mysteriously by former girlfriends who thought they had been jilted. Lucille's hunt for a third husband brings her to the pre-Civil War mansion of Sister Sadie, an elegant, affluent, older woman, a "conjure lady" who prides herself on doing only good—never casting bad spells. Sadie refuses to help Lucille attract as her third husband a married bus driver. To break up a good marriage would be against her code of ethics. Sadie adds, however, that if Lucille betrays their professional relationship by visiting another "spiritualist," she will have to hurt Lucille.

The final scene begins on the street in front of the Lucas' butcher shop. Leon comes out of his store to tell Horace Walker to stop selling seafood from his taxi right in front of the butcher shop, although Horace has been doing it for the last ten years. Leon also breaks the news that his sister Mary, whom Horace had his eyes on, is in love with the out-of-towner Gregg Harris, whom neither Leon nor Horace trust. Gregg appears, greets the two men, and enters the shop where he and Mary exchange sweet nothings. Leon and Horace are followed into the shop by Buster, a down-and-out blues singer, who is introduced to Gregg for what appears to be the first time. When Buster and Gregg walk away together, it is revealed that they know one another and are together concocting a scheme to swindle Mary Lucas out of her savings.

#### 2. "Frank's Place"

"Frank's Place" was a weekly television situation comedy that presented twenty-two episodes set in whole or in part in a New Orleans restaurant called "Chez Louisiane." The central character is Frank

Parrish, a young university professor from Boston who inherited the restaurant from the father whom he had not known since infancy. The restaurant serves both as a constant backdrop for the regular supporting characters who work in or near the restaurant, and as a point of assembly for guest characters.

The pilot episode brings Frank, a genteel black intellectual, from Boston to New Orleans upon the death of his estranged father. Fully intending to sell the restaurant he has inherited, Frank is persuaded by the food, the atmosphere, the unusual employees and a mysterious voodoo "spin," to give up his life in Boston in favor of moving to New Orleans to run the restaurant.

The principal characters of "Frank's Place" include the wheelchair-bound Bertha Griffin–Lamour, owner of the local funeral home, and her daughter Hannah, the embalmer. Big Arthur, the chef of Chez Louisiane, wears a sea captain's hat and carries a baseball bat. The Reverend Tyrone Deal is a card-playing wheeler-dealer who dabbles in real estate and hangs out at the restaurant while trying to arrange a pulpit. Miss Marie is a grandmotherly, idiosyncratic waitress. Bubba Weisberger is a white Jewish lawyer who lives in the neighborhood and counsels Frank on matters concerning the restaurant.

Plaintiff alleges substantial similarity between two distinct storylines in each of the works: (1) voodoo and (2) the missing body. In "Frank's Place," voodoo appears in several different episodes. In the pilot and the ensuing episode entitled "Frank Returns," Frank is persuaded to leave his home and professorship in Boston after a series of unexplained mishaps and strange incidents that are caused by a voodoo "spin" put on Frank to bring him to New Orleans to take over the restaurant. In another episode entitled "Dueling Voodoo," Frank's financial manager advises him to evict a tenant, Miz Tallant, from a small apartment building that he inherited from his father. Miz Tallant apparently had already driven away most of the other residents of the building, and was refusing to pay her rent. Miz Tallant is a wild-eyed and intimidating voodoo practitioner who surrounds herself with caged birds. Frank seeks the help of a voodoo doctor, Madame Torchet, who accompanies him to the Tallant apartment. After engaging in a battle of wills with Miz Tallant, Madame Torchet prepares and sells to Frank a magic powder which will cause the tenant to move out if Frank applies it directly to her face. Frank subsequently visits Miz Tallant and manages to powder her face. She vacates the apartment.

The missing body storyline is developed in the "Where's Ed?" episode of "Frank's Place." That comic episode begins inside the funeral home viewing room at midnight. Four members of the Driving Club enter and steal the body of their fellow driver Ed from its casket. They sneak the corpse into the darkened Chez Louisiane, where they carry out their promise to Ed to toast him upon his discharge from the hospital. Later in the episode, Hannah, the embalmer, discovers that Ed's body has disappeared from its casket in the funeral home. Frank comes upon the corpse in the freezer of his restaurant minutes before a Board of Health inspector pays a surprise visit. The corpse is shuffled around by the Driving Club members, and eventually reappears during Ed's closed-casket funeral, sitting upright in the back of the room among the mourners.

Since plaintiff does not assert that the remaining eighteen episodes of "Frank's Place" bear any specific similarity to "Peachtree Street," it is not necessary to describe them in detail.

### Discussion

#### A. Summary Judgment in Copyright Infringement Actions

A motion for summary judgment shall be granted if the court "determines that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Brady v. Town of Colchester, 863 F.2d 205, 210 (2d Cir.1988). The test for granting a summary judgment motion parallels the standard

for a directed verdict. If the evidence is such that a reasonable finder of fact could return a verdict for the nonmoving party, then there is a genuine factual dispute and summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *see also Blum v. Koch,* 716 F.Supp. 754, 757 (S.D.N.Y.1989).

■ To determine whether a challenged work is substantially similar to a copyrighted work, the court must put itself in the position of an ordinary observer. The Second Circuit test, taken from an observation by Judge Learned Hand, is whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Horgan v. Macmillan, Inc.,* 789 F.2d 157, 162 (2d Cir.1986) *quoting Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir.1960). *See also In Design v. Lynch Knitting Mills, Inc.,* 689 F.Supp. 176, 179 (S.D.N.Y.), *aff'd without opinion,* 863 F.2d 45 (2d Cir.1988). The Second Circuit test has also been expressed as "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Ideal Toy Corp. v. Fab–Lu Ltd.,* 360 F.2d 1021, 1022 (2d Cir.1966). Although whether two works are substantially similar is often a factual issue that precludes summary judgment, the Second Circuit has recognized that summary judgment may be appropriate in copyright infringement actions "either because the similarity between two works concerns only 'non-copyrightable elements of the plaintiff's work,' or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Warner Bros., Inc. v. American Broadcasting Companies, Inc.,* 720 F.2d 231, 240 (2d Cir.1983) (citations omitted). *See also Durham Industries, Inc. v. Tomy Corp.,* 630 F.2d 905, 918 (2d Cir.1980); *Zambito v. Paramount Pictures Corp.,* 613 F.Supp. 1107, 1110 (E.D. N.Y.), *aff'd without opinion,* 788 F.2d 2 (2d Cir.1985).

### B. Substantial Similarity

■ To prevail in this copyright infringement action, the plaintiff must demonstrate the existence and validity of his copyright, and copying by the defendants. *Reyher v. Children's Television Workshop,* 533 F.2d 87, 90 (2d Cir.), *cert. denied,* 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976). The defendants have conceded the existence and validity of plaintiff's copyright for purposes of this motion and seek summary judgment only on the issue of copying.

■ There is no direct evidence of copying in this case. However, copying may be proved by circumstantial evidence of the defendants' access to the copyrighted work and the "substantial similarity" of the protectable material in both works. *Id.* at 90. Thus, the question is whether a rational jury could find substantial similarity between the copyrightable elements of "Peachtree Street" and "Frank's Place."

It is an axiom of copyright law that copyright protection is limited to an author's original expression of an idea and does not extend to the idea itself. *Mazer v. Stein,* 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954). The Second Circuit explained the distinction between protected expression and unprotected ideas in *Reyher v. Children's Television Workshop,* 533 F.2d 87 (2d Cir.), *cert. denied,* 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976), stating "that the essence of infringement lies in taking not a general theme but its particular expression through similarities of treatment, details, scenes, events and characterization." *Id.* at 91. Also beyond protection are "thematic concepts or scenes which necessarily must follow from certain similar plot situations." *Id.*

■ Courts have examined a number of different factors to determine whether substantial similarity exists. Not a single word of plaintiff's script appears in "Frank's Place." Nor does plaintiff complain that any dialogue or the name of any character is similar. Plaintiff complains of three areas of alleged similarity between "Peachtree Street" and "Frank's Place"— similar characters, similar plots and scenes, and similarity as to "feel"—and argues

that as to each, a trier of fact could find substantial similarity between the two works. Each of these arguments will be considered in turn.

### 1. Similar Characters

 Copyright law provides very limited protection to the characters presented in a creative work. Basic character types are not copyrightable. *See Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121–22 (2d Cir.1930), *cert. denied*, 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1931). While plaintiff argues that the similarities between various characters in the two works constitute general evidence of copying, he claims only the "conjure lady," Sister Sadie, as a copyrightable character. But, as plaintiff acknowledges, only a uniquely developed character with some degree of novelty is copyrightable. As the Second Circuit stated in *Nichols v. Universal Pictures Corp.*, 45 F.2d 119 (2d Cir.1930), *cert. denied*, 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1931), "the less developed the characters, the less they can be copyrighted." *Id.* at 121. *See also Smith v. Weinstein*, 578 F.Supp. 1297, 1303 (S.D.N.Y.), *aff'd without opinion*, 738 F.2d 419 (2d Cir.1984). Sister Sadie is not one of those rare copyrightable characters, largely because she is too undeveloped in the pilot script of "Peachtree Street" to be more than a stock character.

A comparison of Sister Sadie and the two voodoo practitioners in "Frank's Place" reveals only the most general similarity that may be said to connect all those who claim some knowledge of the occult. The "conjure lady" in "Peachtree Street," Sister Sadie, is described as an affluent, somewhat eccentric older woman, consulted by the rich for her knowledge of the power of roots, herbs and bones. She refuses to cast evil spells as against her code of ethics. The two voodoo practitioners in "Frank's Place" are much more developed characters than Sister Sadie. Miz Tallant is a wild-eyed, intimidating woman teetering on the edge of sanity. She lives with hundreds of birds. Her name, her birds, and her gestures all convey the image of a threatening bird of prey. Madame Torchet is an attractive, pragmatic voodoo doctor who is also an astute businesswoman. She is engaged by the employees of Chez Louisiane to put a "spin" on Frank that will cause him not to sell the restaurant, but rather to move to New Orleans and keep the restaurant in operation. She also assists Frank in his eviction of Miz Tallant by selling him $400 worth of "controlling powder." Her specialty appears to be business intervention.

It should be noted that the word "voodoo" is not used in "Peachtree Street." Sister Sadie is described as a "conjure lady," and her competitor is described as another "spiritualist." In contrast, neither "conjure" nor "spiritualist" is used in "Frank's Place," but rather the term "voodoo" is used. For example, "Dueling Voodoo" is the title of the episode in which Madame Torchet, who is described as a "voodoo doctor," attempts to dominate the other voodoo practitioner, Miz Tallant. Furthermore, the expression "cast a spell" is not used in "Frank's Place." Madame Torchet "puts a spin" on Frank, a phrase that is not used in "Peachtree Street." These significant differences highlight the fundamental weakness in plaintiff's position, namely that Sister Sadie is not a developed character, but a category, and categories are not copyrightable.

### 2. Similar Plots and Scenes

 The rule of law that copyright protects only an author's original expression of an idea and not the idea itself compels the conclusion that plaintiff's claims of storyline similarities also fail. It has long been recognized that all fictional plots, when abstracted to a sufficient level of generalization, can be described as similar to other plots. In *Nichols v. Universal Pictures Corp.*, 45 F.2d 119 (2d Cir.1930), *cert. denied*, 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1931), the Second Circuit affirmed a decree for the defendant in an action in which the author of the play "Abie's Irish Rose" alleged that the motion picture "The Cohens and the Kellys" infringed her copyright. The plots of both works involved "a quarrel between a Jewish and an Irish father, the marriage of

their children, the birth of grandchildren and a reconciliation." *Id.* at 122. Writing for the court, Judge Learned Hand held that these similarities in plot were merely ideas not subject to copyright protection:

> A comedy based upon conflicts between Irish and Jews, into which the marriage of their children enters, is no more susceptible of copyright than the outline of Romeo and Juliet.

*Id.* at 122.

Similarly, basic plot ideas involving voodoo as a dramatic exposition of culture or a missing body as a comedic prop are not protectable. An examination of "Peachtree Street" and "Frank's Place" shows that there is no similarity between the "conjure lady" storyline developed by the plaintiff and the voodoo storyline of the defendants. The missing body storyline in each of the two works is also very different. In "Peachtree Street," a living human being who has no relationship to the other characters is accidentally lost from the back of an ambulance. In "Frank's Place," the corpse of a dead friend is deliberately stolen from a funeral parlor. These plots or storylines are clearly different. Only by reducing them to a common idea—the disappearance of a body—can one find similarity. That common idea is not copyrightable.

### 3. Similarity of "Feel"

When determining substantial similarity, a court may "properly consider the 'total concept and feel' of the works in question." *Reyher*, 533 F.2d at 91. However, plaintiff's argument that a reasonable jury could find the general nature and feel of these two works to be substantially similar is not supported by the evidence—the works themselves. Plaintiff describes the feel of his own work in his introduction. As noted above, "Peachtree Street" is set in a small southern town and "[m]ost of the characters ... derive from the so called Negro folk humor (idiom). Hard working, industrius [sic], simple people." This description cannot be applied to "Frank's Place." Frank Parrish, a sophisticated, Northeastern professor who has chosen to run a restaurant in the cosmopolitan city of New Orleans cannot be perceived as a simple, industrious blue collar worker in a small southern town who is derived from "Negro folk humor." Nor do the other principal characters of "Frank's Place" fit that description.

"Peachtree Street" is an undeveloped work with sketchy characterization and limited dialogue. Although plaintiff's counsel verbalizes allegedly substantial similarities between the characters, plots, and feel of "Peachtree Street" and "Frank's Place," these cannot be discerned from the actual content of the two works. Based on a comparison of the works, plaintiff's claim of copyright infringement cannot be sustained.

Finally, the affidavit of Jan Hartman, plaintiff's expert, does not raise a genuine issue of material fact. The affidavit does not point to anything in the text of either work that supports a finding of substantial similarity, but rather relies on the same abstract concepts discussed above.

### C. *The Lanham Act Claim*

Plaintiff's second claim is that defendants' failure to identify him as the source of "Frank's Place" constitutes false designation of origin in violation of the Lanham Act. Although it is not clear that a claim in the nature of copyright may be stated under the Lanham Act, I need not reach that issue. As both parties recognize, substantial similarity between "Peachtree Street" and "Frank's Place" is an essential element of plaintiff's claim to be the originator of "Frank's Place." Since I find no substantial similarity between "Peachtree Street" and "Frank's Place," and thus, no circumstantial evidence of copying by defendants, plaintiff's Lanham Act claim necessarily fails.

### Conclusion

For all the foregoing reasons, defendants' motion for summary judgment is granted.

SO ORDERED.